515 A.2d 220

**William R. GRECO**

v.

**STATE of Maryland.**

**No. 142, Sept. Term, 1985.**

Court of Appeals of Maryland.

Oct. 3, 1986.

William W. Cahill, Jr. (Thomas C. Morrow, William K. Meyer and Weinberg & Green, on the brief), Baltimore, for appellant.

Gary E. Bair, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on the brief), Baltimore, for appellee.

Before MURPHY, C.J., and SMITH *, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

COUCH, Judge.

We granted certiorari in this case to determine questions of venue and the application of the statute of limitations in a Medicaid fraud criminal prosecution against Dr. William R. Greco.

I

The underlying facts giving rise to the criminal charges brought in this case are not in dispute. Suffice it to say that Dr. Greco was a stockholder in a corporation which operated Magnolia Gardens Nursing Home (Magnolia), a residential care facility located in Prince George's County. He was also Magnolia's administrator. Magnolia was a participant in the State's medical assistance program (Medicaid). In Maryland, Medicaid is administered by the Department of Health and Mental Hygiene (DHMH) located in Baltimore City.

Under the Medicaid program, the State reimburses health care providers, including nursing homes such as Magnolia, for a portion of their costs based on the number of eligible patients whom the providers serve. To receive reimbursement a participant in the program must submit a reimbursement application containing two different annual cost reports—an Interim Rate Calculation (IRC) and a Statement

---

* Smith, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Art. IV, Sec. 3A, he also participated in the decision and the adoption of this opinion.

of Reimbursable Costs (SRC). An IRC is a statement of projected reimbursable cost, while the SRC is a statement of actual cost incurred. The reimbursement application and annual cost reports were, at the pertinent time involved here, submitted to Hospital Cost Analysis Services (HCAS), DHMH's contract auditor. HCAS was located in Baltimore County.

HCAS, using the statements and representations submitted by Magnolia, calculated Magnolia's per diem payment rate per patient and notified DHMH thereof. DHMH, using this rate, then preliminarily determined the amount of money payable as reimbursement to Magnolia. Magnolia was duly notified by DHMH as to the amount of reimbursement it was entitled to. Magnolia then had the opportunity to update the "pre-invoice" amount of reimbursement by adding to its submitted statements and representations the number of new patient admissions and subtracting the number of patients who had left the facility. This updated information was sent by Magnolia to DHMH in Baltimore City. At this point DHMH was able to finally determine the amount of reimbursement Magnolia was entitled to and thus to request the Comptroller of the Treasury in Annapolis to have a check issued for that amount to Magnolia. When such a check is issued from Annapolis to a participant, a "voucher" is included demonstrating how the amount of the check was computed; this voucher is prepared by DHMH in Baltimore City.

Dr. Greco was indicted by the Grand Jury for Baltimore City on six counts of Medicaid fraud,[1] three counts of false pretenses,[2] and one count of theft.[3] The charges of Medicaid fraud stemmed from the inclusion of certain non-reimbursable expenses by Dr. Greco within the statement

---

1. Md.Code (1957, 1982 Repl.Vol.), Art. 27, § 230C.

2. Md.Code (1957, 1982 Repl.Vol.), Art. 27, § 140.

3. Md.Code (1957, 1982 Repl.Vol.), Art. 27, § 342.

of Magnolia's annual costs in Medicaid reimbursement applications submitted in 1977, 1978, 1979 and 1980.

Dr. Greco contended in the trial court that the entire indictment should be dismissed since venue was improper and the statute of limitations had expired as to the Medicaid fraud counts; the trial court rejected this contention. Following a non-jury trial, he was acquitted of the false pretenses counts as well as the theft count, but convicted of the Medicaid fraud counts.

The Court of Special Appeals rejected Dr. Greco's venue and statute of limitations arguments and affirmed. *Greco v. State*, 65 Md.App. 56, 499 A.2d 209 (1985). We concur with the judgment of the intermediate appellate court and will likewise affirm.

## II

### (A)

Dr. Greco first contends that the trial court erred in failing to grant his motion for judgment of acquittal because the State had failed to prove the charged offenses were committed in Baltimore City.

The thrust of appellant's argument, simply put, is that "each count of the indictment alleged that the offenses were committed in [Baltimore] City;" therefore there had to be proof beyond a reasonable doubt that Dr. Greco, *in Baltimore City,* knowingly and wilfully made or caused to be made false statements or representations of a material fact in any application for any benefits or payments under a State plan established by Title XIX of the Social Security Act of 1935; or made such statement or representation for use in determining rights to those benefits or payments.[4]

---

**4.** Greco was accused of Medicaid fraud as specifically defined by Md.Code, Art. 27, § 230B(b)(1) and (2):

"(1) Knowingly and wilfully making or causing to be made any false statement or representation of a material fact in any applica-

Relying on the absence of any evidence showing that any statement or representation was made, or caused to be made, in Baltimore City, Dr. Greco now argues that there was a significant variation between the *allegata* in the indictment and the *probata* as adduced at trial, such that acquittal was required. He also contends that the State failed to show that Baltimore City was the proper venue for the trial.

We find no merit to appellant's first argument that since the State failed to prove he made or caused to be made any false statement or representation in Baltimore City, acquittal was required. We observe that Article 20 of the Maryland Declaration of Rights provides for the right of an accused to be tried where the facts arise. The common law likewise afforded the accused the right to be tried where the crime was committed. In *Lodowski v. State*, 302 Md. 691, 707, 490 A.2d 1228 (1985), *vacated on other grounds,* — U.S. ——, 106 S.Ct. 1452, 89 L.Ed.2d 711 (1986), we reiterated this general rule and shall continue to adhere to it today. In applying this rule, we bear in mind what our predecessors said long ago in *State v. Kriss*, 191 Md. 568, 575, 62 A.2d 568 (1948) (quoting with approval the United States Supreme Court in *Strassheim v. Daily*, 221 U.S. 280, 285, 31 S.Ct. 558, 560, 55 L.Ed. 735 (1911)):

"Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power."

Since our decision in *Kriss*, we have been presented with very few cases requiring its application. In *Stewart v. State*, 275 Md. 258, 340 A.2d 290 (1975), we held that venue was proper in a jurisdiction where an escapee was commit-

tion for any benefit or payment under a State plan established by Title XIX of the Social Security Act of 1939; [sic]

"(2) Knowingly and wilfully making or causing to be made any false statement or representation of a material fact for use in determining rights to those benefits or payments;"

ted to custody, even though at the time of the escape he was in another jurisdiction. In reaching this conclusion, we noted:

"[A]lthough the prohibited act may physically take place in a separate geographical area, the effects of that act occur at the place of confinement. The concurrence of the act with its resultant effect thus permits venue in the subdivision where the 'place of confinement' is located. *See Urciolo v. State,* 272 Md. 607, 631, 325 A.2d 878, 892 (1974)."

*Stewart,* 275 Md. at 273, 340 A.2d 290.

In our view what the United States Court of Appeals stated in *United States v. Candella,* 487 F.2d 1223 (2d Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1563, 39 L.Ed.2d 872 (1974), is apposite here. There Judge Mulligan stated for the Court:

"We think that venue is properly laid in 'the whole area through which force propelled by an offender operates.' *United States v. Johnson, supra,* 323 U.S. [273] at 275, 65 S.Ct. [249] at 250 [89 L.Ed. 236 (1944) ]. The force propelled here by the defendants immediately contemplated Manhattan. 18 U.S.C. § 1001 defines the offense as the making of a false or fraudulent statement or representation in a matter within the jurisdiction of a federal agency. The false statements here were intended to produce funds. The statements continued to be false and continued to be within the jurisdiction of the United States not only when initially presented but also upon arrival in Manhattan, where the decision was reached to make the funds available. See *United States v. Kenofskey,* 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836 (1917). Venue for all counts thus was properly laid in the Southern District of New York."

*Id.* at 1228. *See also United States v. Blecker,* 657 F.2d 629, 632 (4th Cir.1981), *cert. denied,* 454 U.S. 1150, 102 S.Ct. 1016, 71 L.Ed.2d 304 (1982); *United States v. Reed,* 773 F.2d 477, 482 (2d Cir.1985) ("Established caselaw thus allows prosecutions under many federal statutes to be

brought in any district where the effects of the crime are felt").

The recent decision of the United States Court of·Appeals for the Eighth Circuit in *United States v. Marchant,* 774 F.2d 888 (8th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1190, 89 L.Ed.2d 305 (1986), is also on point.  In that case, the defendant was convicted of wilfully attempting to evade income tax.  He argued that, because he engaged in no conduct relating to the filing of his returns in the Eastern District of Arkansas, venue was improper in that district. The record indicated that the Government offered no proof that the defendant was even in the district during the relevant time periods.

Concluding that venue was proper in the Eastern District, the court of appeals reasoned:

"Here, Marchant [the defendant] signed and mailed his returns in the Western District of Arkansas.  Only his accountant's preparation of the returns occurred in the Eastern District.  However, Marchant permitted his accountant to carry false information into the Eastern District and there to prepare and attest returns understating Marchant's tax liability.  Marchant therefore propelled a force into the Eastern District as surely as had he personally prepared the returns in that district.  Although Marchant's violation ... was completed in another district, it was set in play within the Eastern District."

*Id.* at 891.

There can be no doubt that Dr. Greco caused to be prepared IRC and SRC reports that contained false material statements.  These false statements or representations made or caused to be made by Dr. Greco had a continuing effect and impact not only in Baltimore County, where the HCAS used and relied on the facts within the reports in establishing a per diem/per patient interim rate of reimbursement (for recommendation to the Department of Health and Mental Hygiene), but also in Baltimore City, where the DHMH is located.  As the intermediate appellate

court recognized, "HCAS's approval of the SRCs and IRCs and transmittal to DHMH in Baltimore City for payment were in furtherance of Greco's fraudulent scheme to defraud the State." 65 Md.App. at 67, 499 A.2d 209. Therefore, under clear authority cited above, Dr. Greco constructively made or caused to be made false statements or representations in Baltimore City and was subject to indictment there. Not only was there proof at trial that HCAS provided DHMH with the product of the false statements or representations made or caused to be made by Dr. Greco, but Magnolia had the ability to furnish updated patient information to DHMH in Baltimore City subsequent to receiving the "pre-invoice" from DHMH. Certainly when this is done, the updated patient information along with the cost reports furnished to HCAS formed the basis for DHMH's determination of the amount of money reimbursement Magnolia was entitled to.

While it appears that there were no false statements or representations made or caused to be made with respect to any updated patient information, such information, in conjunction with the HCAS-approved interim rate for Magnolia (allegedly based on false statements or representations from Magnolia) impacted and influenced DHMH's computations of the amount of reimbursement Magnolia was entitled to; such impact occurred in Baltimore City. Accordingly, the trial court committed no error in denying Dr. Greco's motion for judgment of acquittal. With respect to appellant's improper venue contention, what we have just said is dispositive thereof.

(B)

██ Dr. Greco next argues that because the indictment against him was filed more than three years after his alleged unlawful conduct, prosecution was time barred. He contends the trial court thus erred in refusing to dismiss the indictment, as did the Court of Special Appeals in affirming that refusal. We disagree.

Article 27, § 230D of the Maryland Code (1957, 1982 Repl. Vol.) provides that where a person is convicted of Medicaid fraud in which the value of the money, services or goods involved is $500.00 or more, that person is guilty of a felony. Where the amount involved in the fraud is less than $500.00, the offense is a misdemeanor. Maryland Code (1957, 1984 Repl. Vol.), Courts and Judicial Proceedings Article, § 5–106(h) provides:

"*§ 5–106. Prosecution for misdemeanor.*

    *     *     *     *     *     *     *     *     *     *     *

"(h) Medicaid fraud.—A prosecution for the offense of Medicaid fraud under Article 27, Sec. 230B of this Code shall be instituted within 3 years after the offense was committed."

Reading this subsection in isolation Dr. Greco maintains, notwithstanding the general rule in Maryland that there is no statute of limitations for felonies committed in and contrary to the laws of this State, *see Smallwood v. State,* 51 Md.App. 463, 467, 443 A.2d 1003 (1982), that since more than three years had elapsed after his alleged wrongdoing and the indictment, the latter should have been dismissed. Indeed, what Dr. Greco argues is that the legislature, in enacting subsection (h) to § 5–106, set forth above, intended to place a three year limitation period on prosecutions for Medicaid fraud, whether the fraud constitutes a misdemeanor or a felony. We cannot agree.

Of course, when construing one provision of a statute, which is part of a statutory scheme, the legislative intention must be gathered from the entire statute, rather than from only one part. *Bridges v. Nicely,* 304 Md. 1, 10, 497 A.2d 142 (1985). Furthermore, where statutes relate to the same subject matter, and are not inconsistent with each other, they should be construed together and harmonized where consistent with their general object and scope. *Id.; Willis v. State,* 302 Md. 363, 375, 488 A.2d 171 (1985). If we were to accept Dr. Greco's proposition that subsection (h) to § 5–106 applies to Medicaid fraud misdemeanors as well as

felonies, we would be considering subsection (h) as a provision independent and wholly unrelated to the remainder of § 5–106. As our above cited authority makes clear, this we cannot do. Fatal to Dr. Greco's argument is the well-settled rule that a caption is not part of the law, *unless expressly provided or part of the law as enacted. Erwin & Shafer, Inc. v. Pabst Brewing Co.,* 304 Md. 302, 313, 498 A.2d 1188 (1985) (emphasis added); *Smelser v. Criterion Ins. Co.,* 293 Md. 384, 444 A.2d 1024 (1982). Since it was included and made part of the original enactment, the titling or caption of § 5–106 is not only significant, but is dispositive of the issue as well. *See* 1973 Md. Laws 1st Sp.Sess. Ch. 2 and Md. Code (1957, 1984 Repl.Vol.), Courts and Judicial Proceedings Article, § 5–106. When subsection (h) is read in conjunction with the entire § 5–106, including that section's caption, *Smelser, supra,* it is patent that the statute was intended to apply only to misdemeanor Medicaid fraud prosecutions.

Consequently, the passage of three years between the last fraudulent act and the return of the indictment against Dr. Greco did not bar his prosecution. Accordingly, the trial court did not err in rejecting Dr. Greco's limitations argument.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.