579 A.2d 265

**Denise MASSEY**

v.

**STATE of Maryland.**

**No. 136, Sept. Term, 1988.**

Court of Appeals of Maryland.

Sept. 20, 1990.

606

Sherrie B. Glasser, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for petitioner.

Ann N. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued Before ELDRIDGE, COLE, RODOWSKY,

McAULIFFE, ADKINS,* and BLACKWELL,** JJ.

ELDRIDGE, Judge.

This criminal case presents the narrow issue of when the State must institute a prosecution for welfare perjury, a misdemeanor proscribed by Maryland Code (1957, 1985 Repl.Vol., 1989 Cum.Supp.), Art. 88A, § 62(a). More broadly, however, the case concerns the appropriate period of limitations for misdemeanor prosecutions generally.

The relevant facts are as follows. On September 9, 1987, the State filed a ten count criminal information against petitioner Denise Massey in the Circuit Court for Caroline County. Counts I through IV charged her with welfare perjury and were based on allegations that on four separate occasions, from May 1978 through July 1983, Massey made false statements in applications to obtain food stamps. She also was charged with welfare fraud (count V), theft (count VI), and medicaid fraud (counts VII through X), all based on the same acts underlying the welfare perjury charges.[1]

Massey filed a motion to dismiss the criminal information, asserting, *inter alia,* that the charges in counts I through V and VII through X were barred by Code (1974, 1989 Repl.Vol.), § 5–106 of the Courts and Judicial Proceedings Article. Section 5–106(a) reads as follows:

"Except as provided by this section, a prosecution for a misdemeanor not made punishable by confinement in the penitentiary by statute shall be instituted within one year after the offense was committed."

---

* Adkins, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Art. IV, § 3A, he also participated in the decision and the adoption of the opinion.

** Blackwell, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

1. Massey was originally charged with the same offenses in the District Court of Maryland on June 19, 1987.

Subsection (g) of § 5–106 provides a three year limitations period for welfare fraud prosecutions, while subsection (h) provides the same period for medicaid fraud prosecutions. There is no specific provision concerning welfare perjury.

The trial court conducted a hearing on Massey's motion, at which the State entered a nolle prosequi with regard to count V (welfare fraud). In a written order, the court granted the motion to dismiss as to counts I through IV (welfare perjury), but denied it as to counts VII through X (medicaid fraud). On the day a jury trial was scheduled, the State nol prossed all remaining counts. The State later filed a notice of appeal.

In an unreported opinion, the Court of Special Appeals reversed the order dismissing counts I through IV, holding that a prosecution for welfare perjury is not subject to any limitations period. The Court of Special Appeals pointed out that Art. 88A, § 62(a), defining the offense of welfare perjury, states that a person committing the offense "is guilty of perjury and upon conviction therefor is subject to the penalties provided by law for perjury." The Court of Special Appeals then pointed out that, under Code (1957, 1987 Repl.Vol.), Art. 27, § 439, perjury is subject "to imprisonment in the jail or penitentiary for not more than ten years." The intermediate appellate court concluded that, since one charged with welfare perjury "faces the possibility of confinement in the penitentiary," the one year limitations period in § 5–106(a) of the Courts and Judicial Proceedings Article was inapplicable.

Massey filed a petition for a writ of certiorari, raising the issue of whether the State was entitled to benefit from an unlimited limitations period within which to charge her for welfare perjury, while allegedly greater offenses based on the same acts, namely welfare fraud and medicaid fraud, were subject to three year limitations periods under § 5–106. This Court granted her petition and directed the parties to brief and argue two additional questions: (1) whether a prosecution for welfare perjury is subject to the

one year statute of limitations in § 5–106(a); and (2) what is the meaning of the phrase "not made punishable by confinement in the penitentiary by statute," contained in § 5–106(a), in light of Code (1957, 1987 Repl.Vol., 1989 Supp.), Art. 27, § 690? Our answers to the latter questions are dispositive, and thus we need not address the issue raised in the certiorari petition.

At common law, there was no general period of limitations applicable to criminal proceedings. 1 Chitty, *A Practical Treatise On The Criminal Law* 160 (1819); Hochheimer, *The Law Of Crimes And Criminal Procedure* 78 (2d Ed.1904). In Maryland, many criminal offenses are subject to specific limitations periods by statute. *See, e.g.,* Code (1974, 1989 Repl.Vol.), §§ 5–106(b)(1) of the Courts and Judicial Proceedings Article (two year limitations period for prosecutions under the vehicle code for unlawfully using a driver's license), 5–106(e)(3) (two year limitations period for criminal malfeasance, misfeasance, or nonfeasance in office by State officers), and 5–106(g) (three year limitations period for welfare fraud).

In the absence of a specific statutory limitations period for a particular offense, the State may institute a prosecution for a felony at any time. *Greco v. State*, 307 Md. 470, 478, 515 A.2d 220, 224 (1986).

As to misdemeanors, the General Assembly over one hundred years ago mandated: "No prosecution ... shall be commenced for ... any misdemeanor except those punished by confinement in the penitentiary, unless within one year from the time of the offence committed." Code (1860), Art. 57, § 10. At that time, and for many years thereafter, it was common for criminal statutes to designate not only the length of incarceration for a criminal conviction but also the place where the defendant would serve the sentence. Trial judges would sentence convicted defendants to the particular institutions in accordance with the statutory authorization. Presumably, what the Legislature considered to be the most serious misdemeanors were made punishable by

confinement in the state penitentiary. Sentences for misdemeanors apparently deemed less serious were by statute to be served in the county jails or state institutions' such as the house of correction.[2] Under this framework, in the absence of a specific statute of limitations for a particular offense, the State had an unlimited time in which to institute a prosecution for what were considered "penitentiary misdemeanors," while other misdemeanors were generally subject to a one year limitations period.

■ Art. 57, § 10, was renumbered as Art. 57, § 11, in 1904, and remained virtually unchanged until 1973.[3] This Court stated that, under Art. 57, § 11, "[m]isdemeanors punished by confinement in the penitentiary are excluded from the [one year limitation] provisions of this section of the statute, and are placed along with felonies." *Schaum- loeffel v. State*, 102 Md. 470, 472, 62 A. 803, 804 (1906). *See Archer v. State*, 145 Md. 128, 137–138, 125 A. 744, 747 (1924) (these misdemeanors are "class[ed] ... with felonies"). It is the specific statutory authorization of imprisonment in the penitentiary (even as an alternative to other forms of punishment), and not the punishment actually imposed, which determined whether the unlimited period or the one year period of the statute should be applicable. *See*

---

**2.** *Compare* Code (1860), Art. 30, § 52 (false pretenses "to be punished by fine and imprisonment, or by confinement in the penitentiary"), with Code (1860), Art. 30, § 203 (interrupting telegraph operations punishable by fine "or confine[ment] in the jail of the county or city where the offence was committed"). *See also, e.g.,* Code (1888), Art. 27, § 117 (one convicted of selling seed by false representations to be "imprisoned in the Maryland house of correction for not less than six months nor more than two years").

**3.** *See* Code (1957, 1972 Repl.Vol.), Art. 57, § 11 ("No prosecution ... shall be commenced for ... any misdemeanor, except those punished by confinement in the penitentiary, unless within one year from the time of the offense committed"). When the General Assembly enacted the Courts and Judicial Proceedings Article by Ch. 2, § 1, of the Acts of 1973 (Special Session), it specifically borrowed the not "punishable by confinement in the penitentiary" language from Art. 57, § 11, and included it in the new § 5–106(a). The 1973 legislation is discussed later in this opinion.

*Duncan v. State,* 282 Md. 385, 387–388, 384 A.2d 456 (1978); *Simmons v. State,* 165 Md. 155, 167–168, 167 A. 60, 65 (1933); *Archer v. State, supra,* 145 Md. at 136, 138, 125 A. at 747–748; *Schaumloeffel v. State, supra,* 102 Md. at 472, 62 A. at 804; *Duvall v. State,* 5 Md.App. 484, 487–488, 248 A.2d 401 (1968).

We now turn to Art. 27, § 690, and its history. The predecessor to § 690 originated with Chapter 556 of the Acts of 1916. Ch. 556 enacted Art. 27, § 654, which provided as follows:

> "When any person is convicted, before any Circuit Court of any County, or the Criminal Court of Baltimore, of any crime ... punishable by any imprisonment whatsoever ... said Court may, in its discretion, sentence such person to imprisonment in jail or in the Maryland House of Correction or in the Maryland Penitentiary."

Thus, the 1916 Act gave trial judges the discretion to sentence a defendant convicted of a crime, where the authorized punishment was any imprisonment, to whatever institution the judge deemed appropriate. A defendant convicted of a crime, where a statute dictated that the crime be punished by confinement in the penitentiary, could now be sentenced to imprisonment elsewhere. The 1916 Act also provided that the State Board of Prison Control could transfer prisoners between the house of correction and the penitentiary.

The 1916 statute indicated, however, that the flexibility given judges and prison officials should not affect the classification of crimes based upon the statutorily prescribed place of confinement. The second paragraph of new § 654 stated:

> "It is expressly provided, however, that nothing in this Section shall be construed to add to, alter or change the class of crimes, as they existed before this Act takes effect, with respect to the right of challenge or with respect to the fees in criminal cases, or to make any crime infamous, by reason of any sentence to the Maryland

Penitentiary, or transfer thereto, which would not have been an infamous crime before this Act takes effect...."

The above-quoted second paragraph was largely the reason for this Court's holding in *Archer v. State, supra,* 145 Md. at 137, 125 A. at 747, that the 1916 statute was not intended to change the operation of Art. 57, § 11, concerning the periods of limitations for misdemeanor prosecutions.

Over the next sixty-one years, there were some relatively minor changes in the 1916 statute.[4] Each time the statute was changed, prior to 1967, the above-quoted language from the second paragraph of the 1916 enactment was retained. By 1967, Art. 27, § 654, had been renumbered as Art. 27, § 690.

The statutory provisions from 1916 until 1967 gave trial judges and the Department of Correction flexibility as to where prisoners should be confined. The various enactments authorized judges and correctional officials to depart from the statutorily prescribed places of confinement in particular cases. Nevertheless, none of the enactments prior to 1967 purported to amend the statutes prescribing the places of confinement for particular crimes. These statutory provisions retained the concept of sentences to and confinement in specific state institutions. Prior to 1967, the place of confinement set forth in a section of Art. 27 for a particular crime arguably reflected the Legislature's view of where a person convicted of that crime should normally be confined.

Ch. 695 of the Acts of 1967, on the other hand, brought about major changes regarding the sentencing and confine-

---

4. *See* Ch. 196 of the Acts of 1918; Ch. 434 of the Acts of 1943 (providing for transfers to and from the Maryland State Penal Farm); Ch. 758 of the Acts of 1953 (also affecting transfers); and Ch. 123 of the Acts of 1962 (allowing trial judges to sentence convicted defendants to the Maryland Correctional Institution—Hagerstown, the Maryland Correctional Training Center—Hagerstown, and the Maryland Correctional Camp Center; and allowing the Commissioner of Correction to transfer prisoners between all institutions under the Department of Correction).

ment of persons convicted of crimes. Ch. 695 repealed old Art. 27, § 690, and enacted an entirely new Art. 27, § 690. The new statute largely removed from judges a role in deciding where a person sentenced to imprisonment should be confined. Moreover, in place of the concept of a sentence to a particular state institution, or a confinement in a particular state institution, the new statute substituted the concepts of sentence to and confinement under "the jurisdiction of the Department of Correction" or "the custody of the Commissioner of Correction." In this regard, new Art. 27, § 690(b), as enacted by Ch. 695 of the Acts of 1967, provided as follows:

"(b) Notwithstanding any of the provisions of this Article or any other law to the contrary, on and after June 1, 1967, judges, in the sentencing of convicted persons (a) for any offense for which the provisions of this Article or any other law requires the imprisonment to be served at any one of those institutions enumerated in Section 689 of this Article or (b) any offense for which prior to June 1, 1967, the sentence was made for whatever reason to one of those institutions in Section 689, shall in all such cases sentence such persons to the jurisdiction of the Department of Correction. All such persons shall be committed to the custody of the Commissioner of Correction and delivered to him for imprisonment. Thereafter all such persons shall be held, confined in, assigned to or transferred to such of the institutions and facilities under the jurisdiction of the Department as the Department from time to time may order.

"Any person sentenced prior to June 1, 1967 to any one of the institutions and facilities under the jurisdiction of the Department may, after such date, and not withstanding such sentence, be held, confined in, assigned to or transferred to such of these institutions and facilities as the Department may from time to time order."

New subsection (c) of § 690 provided that no sentence to the Department of Correction could be for less than three

months, notwithstanding any contrary statutory provision.[5] Ch. 695 of the Acts of 1967 also amended Art. 27, §§ 691, 693, 697, 698, 699, 700A, 701, and 702, all relating to the Department of Correction, by deleting references to state institutions and substituting therefore the words "Jurisdiction of the Department of Correction," "Department of Correction," etc.

More importantly, Ch. 695 of the Acts of 1967 repealed the language that was contained in the second paragraph of the section as originally enacted by Ch. 556 of the Acts of 1916. No similar language was contained in the new § 690. Therefore, the language which this Court had relied upon in *Archer v. State, supra,* in holding that the 1916 statute did not affect the limitations periods for prosecuting misdemeanors, and which had been contained in all reenactments prior to 1967, was deleted in 1967.

For purposes of the present case, however, perhaps the most significant change made by Ch. 695 of the Acts of 1967 was the enactment of new § 690(d).[6] Subsection (d) stated as follows:

"(d) Whenever in this Article or any other law reference is made to the sentencing or confinement of prisoners to any of the institutions enumerated in Section 689, such reference shall after June 1, 1967, be construed to mean sentencing or confinement to the jurisdiction of the Department rather than to any particular institution or facility of the Department."

---

**5.** Subsection (c) read as follows:

"(c) No sentence by any judge to the jursidiction of the Department may be for less than three months, any provision of this Article or any other law to the contrary notwithstanding. Nothing in this section shall prevent any judge from committing any minor to any facility to which minors may be committed under the law as it existed prior to June 1, 1967."

The three month period has subsequently been increased. *See* Code (1957, 1987 Repl.Vol., 1989 Cum.Supp.), Art. 27, § 690(c).

**6.** Presently designated § 690(e).

Among the institutions enumerated in § 689 was "The Maryland Penitentiary." Subsection (d) is a commonly used drafting device, having the effect of amending every statutory provision relating to the sentencing to or confinement of persons in the penitentiary, house of correction, etc., and substituting the words "jurisdiction of the Department" for the words "penitentiary," "house of correction," etc.[7] Moreover, § 2 of Ch. 695 provided "[t]hat all laws or parts of laws, public general or public local, inconsistent with the provisions of this Act are hereby repealed to the extent of any such inconsistency."

This Court has not previously discussed the relationship between Ch. 695 of the Acts of 1967 and Art. 57, § 11, or its successor, § 5–106(a) of the Courts and Judicial Proceedings Article, or discussed the effect of one statute upon the operation of the other.[8] Nevertheless, it is significant that the General Assembly, in enacting new criminal statutes after 1967, has not designated criminal offenses as punisha-

[7.] Although subsection (d) represents a common and well-understood drafting device, the use of this device has sometimes been criticized by text writers. *See, e.g.,* R. Dickerson, *The Fundamentals of Legal Drafting,* §§ 7.3 and 7.4 (1965).

[8.] The Court of Appeals applied Art. 57, § 11, in *Fletcher v. State,* 256 Md. 310, 316–317, 260 A.2d 34 (1970), holding that a particular prosecution was subject to the one year limitation period. There was no discussion in that case of the "penitentiary" exception. The Court similarly applied § 5–106(a) of the Courts and Judicial Proceedings Article in *Duncan v. State,* 282 Md. 385, 384 A.2d 456 (1978), holding that a particular prosecution was barred by the one year limitations period. In *State v. Canova,* 278 Md. 483, 490, 365 A.2d 988 (1976), and *McMorris v. State,* 277 Md. 62, 63–64, 355 A.2d 438 (1976), there is dicta indicating that certain offenses are punishable by imprisonment in the penitentiary and thus not subject to the one year limitation period. In none of these cases was the Court's attention drawn to Ch. 695 of the Acts of 1967 and its effect on the period of limitations for misdemeanor prosecutions.

The Court of Special Appeals in *Spillers v. State,* 10 Md.App. 643, 647–648, 272 A.2d 49, *cert. denied,* 261 Md. 728 (1971), in a brief comment, held that Ch. 695 of the Acts of 1967 did not affect the times for bringing misdemeanor prosecutions. The *Spillers* opinion, however, discussed virtually none of the provisions of the 1967 statute or the changes made by that statute.

ble by imprisonment in the penitentiary or any other particular institutions, no matter how serious the offenses may be. *See, e.g.*, Art. 27, § 36B (handgun statute), § 122A (delivery of contraband or controlled dangerous substances to effect escape), § 145(h) (credit card offenses), § 194B (fraud upon cable television companies), §§ 285(d)(4)(iii), 286(b), 286A(b), 286B(f), 286C(b), 287(e), 287A(c), (d), (e), 288, 289 (violations of controlled dangerous substances laws), § 342(f) (theft), § 419A (child pornography), §§ 462(b), 463(b), 464(b), 464A(b), 464B(b), 464C(b) (sex offenses).

■ The conclusion is inescapable that Ch. 695 of the Acts of 1967 effected a substantial change with respect to the appropriate period of limitations for misdemeanor prosecutions. As previously discussed, under former Art. 57, § 11, and present § 5–106(a) of the Courts and Judicial Proceedings Article, a misdemeanor is subject to a one year limitations period unless it is "punishable by confinement in the penitentiary by statute." After Ch. 695 of the Acts of 1967 became effective on June 1, 1967, no misdemeanors were "punishable by confinement in the penitentiary by statute." Although persons could and still can be confined in the penitentiary as a matter of fact, the sentence and confinement "by statute" was to the "jurisdiction of the Department of Correction" after June 1, 1967. This was the thrust of Ch. 695 as a whole. More importantly, new Art. 27, § 690(d), now § 690(e), had the effect of amending every statute referring "to the sentencing ... of prisoners to" the penitentiary and substituting for "the penitentiary" the words "jurisdiction of the Department of Correction."

Our interpretation of Ch. 695 of the Acts of 1967 is reinforced by the repeal of the language, originally contained in the second paragraph of the 1916 enactment, which had disclaimed an intent "to alter, or change the class of crimes" and which had been relied on in the *Archer* case. Our interpretation is further reinforced by the language used in the enactment of new criminal statutes since 1967.

In arguing against this position, the State asserts that the limitations statute (§ 5–106(a) of the Courts and Judicial Proceedings Article) and Art. 27, § 690, "serve distinct purposes," that § 5–106(a) deals with the time for bringing a prosecution, and that § 690 deals with sentencing and confinement (Respondent's brief, pp. 12–13). While the two statutes are concerned with distinct matters, they are also intertwined in one respect. The operation of the exception to the one year period of limitations for misdemeanor prosecutions, contained in § 5–106(a), is entirely dependent upon the sentencing provisions in criminal statutes. There is no statute, and never has been one, classifying offenses as "penitentiary misdemeanors" for limitations purposes, which is independent of the statutory sentencing provisions associated with particular offenses.[9]

---

**9.** In an argument somewhat similar to that advanced by the State, Judge McAuliffe in his dissent stresses that he does "not agree that by enacting Chapter 695 of the Acts of 1967 the General Assembly intended to change the law of limitations in criminal cases." As previously discussed, there is some indication that the General Assembly in 1967 may have intended to change the law of limitations in criminal cases. Nevertheless, even if the General Assembly in 1967 had no particular intent with regard to the law of limitations, and did not focus on the matter at all, this would not change the effect of what it did in 1967. Under the circumstances, the critical intent in determining the operation of the exception in § 5–106(a) is not the legislative intent regarding limitations law; it is the intent concerning whether particular offenses are expressly "punishable by confinement in the penitentiary."

Under § 5–106(a), the operation of "limitations law" is in part dependent upon the provisions of law regarding the confinement of convicted prisoners. Where the operation of one statute is made dependent upon the operation of a second statute, and where the relevant portion of the second statute is changed, the operation of the first statute is automatically changed regardless of any specific "legislative intent" at the time concerning the first statute. For example, in many respects the Maryland income tax law incorporates by reference or is dependent upon the federal income tax law. *See* Maryland Code (1988), §§ 10–204, 10–218 of the Tax–General Article. If there is in a particular year a change in the federal tax law concerning, *e.g.*, adjusted gross income or deductions, there will be a corresponding change in the operation of the Maryland law, even though the General Assembly may have had no specific intent to change the Maryland law at that time. *See, e.g., Evans v. Comptroller,* 273 Md. 172, 175, 328 A.2d 272 (1974); *Marco Assoc. v. Comptroller,* 265 Md. 669, 675, 678,

■ The State also relies upon the 1973 reenactment of Art. 57, § 11, as § 5–106(a) of the Courts and Judicial Proceedings Article, and the retention in § 5–106(a) of the exception for offenses "made punishable by confinement in the penitentiary by statute." In particular, the State points to the Revisor's Note to § 5–106(a), contained in the 1974 edition of the Court and Judicial Proceedings Article, which states as follows:

"Subsections (a) and (b) are new language derived from Art. 57, § 11. This section applies to all misdemeanors, including common-law misdemeanors but excluding misdemeanors made punishable by imprisonment in the penitentiary by statute.

"Although convicted defendants are sentenced to the custody of the Department of Correction rather than to 'confinement in the penitentiary,' a distinction remains between crimes 'punishable by confinement in the penitentiary,' and other crimes. The former are 'misdemeanors placed along with felonies.' Article 27, § 690 (Ch. 123, § 1, Acts of 1962) now repealed, provided that the change in sentencing procedures is not to be 'construed to add to, alter, or change the class of crimes as they existed before July 1, 1943 ... or to make any crime infamous "which would not otherwise have been infamous" '."

Although the above-quoted Revisor's Note may have been technically accurate, it was misleading in that it failed to recognize that a new § 690 was enacted by Ch. 695 of the Acts of 1967, failed to set forth the critical changes made by Ch. 695 of the Acts of 1967, placed reliance on statutory language which was repealed in 1967, and seemed to suggest that there were some criminal statutes effectively providing for confinement in the penitentiary. Nonetheless, we cannot construe the 1973 reenactment of the general misdemeanor statute of limitations, including the penitentiary exception language, as a legislative repeal of Art. 27,

291 A.2d 489 (1972). A similar relationship exists between limitations law in criminal cases and the law concerning places of confinement.

§ 690(d), as enacted by Ch. 695 of the Acts of 1967,[10] or as a legislative restoration of the pre–1967 sentencing language in various criminal statutes.

There is no logical inconsistency between § 5–106(a) as enacted in 1973 and § 690. Section 5–106(a) does not mandate that some criminal statutes provide for confinement in the penitentiary. Rather it says that, whenever a statute does provide for confinement in the penitentiary for a particular offense, the one year limitations period shall not apply to that offense. If the Legislature today were to provide that, notwithstanding Art. 27, § 690, a particular offense should be punished by confinement in the penitentiary, the exception in § 5–106(a) would be fully operative with regard to that offense. The 1973 statutory language and the Revisor's Note reflect a legislative intent that, where a criminal statute does provide for confinement in the penitentiary for a particular misdemeanor, the one year limitations period should not apply to that misdemeanor. The 1973 statute and the Revisor's Note, however, do not reflect a legislative intent to provide affirmatively for confinement in the penitentiary for any offenses where there were no such provisions immediately prior to 1973.

The statutory provision concerning perjury, as presently set forth in Art. 27, § 439, of the 1957 edition of the Annotated Code of Maryland, literally reads that one convicted of perjury is subject "to imprisonment in the ... penitentiary for not more than ten years." If that codified provision had literally read that one convicted of perjury is subject "to imprisonment ... under the jurisdiction of the Division of Correction for not more than ten years," this case would likely not be here. It is doubtful that the State would have appealed from the circuit court's dismissal of the welfare perjury charges. Nevertheless, as a matter of law, the statute punishing perjury does provide that one convicted of the offense is subject "to imprisonment ...

---

**10.** Art. 27, § 690(d), was itself reenacted as § 690(e) by Ch. 128 of the Acts of 1986. *See also* Ch. 527 of the Acts of 1981.

under the jurisdiction of the Division of Correction for not more than ten years." The former reference to the "penitentiary" is not simply unamended language which has become obsolete for sentencing purposes. Rather, the word "penitentiary" has been amended out of the statute. Art. 27, § 690(e), formerly § 690(d), states that "[w]henever in this article or any other law reference is made to the sentencing or confinement of prisoners to [the penitentiary] ..., such reference shall be construed to mean sentencing or confinement to the jurisdiction of the Division [of Correction]...." As previously discussed, this is a drafting technique regularly used by the General Assembly to change statutes. Refusal to give effect to this drafting technique could have grave consequences in the application of a multitude of statutory provisions.

Consequently, because there is no specific limitations period expressly applicable to welfare perjury or perjury, and because welfare perjury or perjury fall into the misdemeanor category, the one year period of limitations set forth in § 5–106(a) of the Courts and Judicial Proceedings Article is applicable.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR CAROLINE COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY CAROLINE COUNTY.

McAULIFFE, Judge, dissenting.

I do not agree that by enacting Chapter 695 of the Acts of 1967 the General Assembly intended to change the law of limitations in criminal cases. The bill itself, and its legislative history, strongly suggest that the legislature was responding to the 1967 recommendation of the Commission to Study the Correctional System of Maryland and the 1966 Report of the Legislative Council Committee on Prison Administration, and that it had no intention of changing the long-standing law which excluded penitentiary misdemean-

ors from the operation of the one year statute of limitations. Subsequent action by the General Assembly in enacting § 5–106(a) of the Courts and Judicial Proceedings Article confirms that the legislative body had no intention of affecting the law of limitations when it enacted Chapter 695.

This Court has said that "[t]he 'meaning of the plainest language' is controlled by the context in which it appears." *Kaczorowski v. City of Baltimore*, 309 Md. 505, 514, 525 A.2d 628 (1987), quoting *Guardian Life Ins. v. Ins. Comm'r*, 293 Md. 629, 642, 446 A.2d 1140 (1982). The proper function of the Court is to define the legislative purpose or goal. *Kaczorowski, supra,* 309 Md. at 514, 525 A.2d 628.

The title of Senate Bill 568, which was enacted as Chapter 695, is comprehensive, and in my judgment fully explains the goal of the legislature. Consistent with the requirements of Article III, section 29 of the Constitution of Maryland, the title describes the single subject of the bill in the following language:

AN ACT to add new Section 689(g) to Article 27 of the Annotated Code of Maryland (1966 Supplement), title "Crimes and Punishments", subtitle "Places of Reformation and Punishment", subheading "Department of Correction", subheading "Institutions", to follow immediately after Section 689(f) thereof; to repeal Section 690 of the said Article, subtitle and subheadings of the Code, and to enact a new Section 690 in lieu thereof, to stand in the place of the section so repealed; to repeal and re-enact, with amendments, Sections 691, 693, 697, 698, 699, 700A(a), 701 and 702 of the said Article, subtitle and subheading of the Code, subheadings respectively "Prisoners" and "Miscellaneous"; to provide that sentences of prisoners formerly made by judges and trial magistrates to particular institutions under the control of the Department of Correction shall be made after the effective date of this Act to the jurisdiction of the Department of Correction, to authorize the Department to establish re-

ceiving and classification centers for prisoners, to autho-
rize the Department to hold, assign and transfer prison-
ers among the State prison institutions as it deems neces-
sary and to amend laws relating to prisoners in order to
make such laws conform to the provisions of this Act.
Conspicuously absent is any statement of intent to change
the basic structure of the law of limitations applicable to
criminal misdemeanors.

The bill was introduced by Senators Snyder, Bishop,
Byron, Hoyer, and Welcome. The 1966 Legislative Council
Committee on Prison Administration was chaired by Sena-
tor Snyder, and counted among its members Senators By-
ron and Welcome. In its report to the General Assembly,
the Committee recommended the very changes that three of
its members later sponsored through this bill. At para-
graph seven of its November, 1966 report, the Committee
said:

> In its consideration of the place of sentence of short-
> term offenders, the Committee has discussed a companion
> change in the sentencing of prisoners to the State system.
> At the present time the judge pronouncing sentence des-
> ignates the prison facility where the sentence is to be
> served. We recognize that this procedure is archaic. We
> have seen photographs of the diagnostic and receiving
> facility in Texas to which all sentenced prisoners first go.
> This type of facility would be desirable in Maryland and
> could be possibly established in conjunction with transfer
> of the Penitentiary. We endorse the concept of initial
> assignment of all prisoners in the State system to such a
> center with transfer later to a suitable facility for con-
> finement. This would require a statutory change to
> sentence prisoners to the custody of the Department of
> Correction. We note that the criminal laws are presently
> being reviewed by the Brune Commission and our com-
> ments should be referred to that group for consideration.

In 1966, the Commission to Study the Correctional System
of Maryland, chaired by Judge Benjamin Michaelson, re-
ceived "A Study of Maryland State Department of Correc-

**624**

tion," prepared by the American Correctional Association. The study recommended a change in the method of commitment of prisoners. This language was used:

> With the proposed establishment of two diagnostic and reception centers and recommended improvements in classification, it is essential that courts commit to the Commissioner rather than to a specific institution. Under this arrangement, individuals committed are received, diagnosed and classified in keeping with their special treatment needs and placed by the Department in the institution or program which best serves to meet these needs.

In 1967, the Commission recommended

> that prisoners when sentenced by the courts should be committed to the Department of Correctional Services rather than to a specific institution as is now the practice.

Report of the Commission to Study the Correction System of Maryland, p. 3 (1967). There can be little doubt that Senate Bill 568, introduced in 1967, was a response to these recommendations, and nothing more.

The majority acknowledges that six years after the enactment of Chapter 695, the General Assembly re-wrote the law relating to limitations in misdemeanor cases, and transferred that law from Article 57, § 11 of the 1957 Code to § 5–106 of the 1974 Courts Article. The majority concedes that in so doing, the legislature retained the "penitentiary misdemeanor" language that has historically defined those misdemeanors not subject to the one-year limitation. Section 5–106(a) provides as follows:

> Except as provided by this section, a prosecution for a misdemeanor not made punishable by confinement in the penitentiary by statute shall be instituted within one year after the offense was committed.

The majority shrugs off this language as being insufficient to repeal Chapter 695 of the Acts of 1967. I suggest the majority misses the point. Section 5–106 was never intended to repeal anything. The legislature had no intention of changing the law of limitations when it enacted Chapter

695—thus it had no intention of repealing that law in 1973. Section 5-106(a) confirms that fact. The Revisor's Note, which was before the legislature when it adopted § 5-106, offers further confirmation of this understanding. *See* Chapter 2, § 1, Laws of Maryland, First Special Session 1973, pp. 209-10.

Moreover, if the majority is correct, the "penitentiary" language of § 5-106(a) has absolutely no meaning, purpose, or effect. We do not generally ascribe to the legislature an intent to do a meaningless act. "Results that are unreasonable, illogical, or that are at odds with the legislative purpose should be avoided." *Harford County v. Edgewater,* 316 Md. 389, 397, 558 A.2d 1219 (1989).

Chapter 695 of the Acts of 1967 did exactly what it was intended to do. It accomplished the correctional reforms that had been recommended to the legislature. The enactment of § 690(d) of Article 27 (now § 690(e)) was intended to affect the penitentiary language contained in other provisions of Article 27 only with respect to matters of sentencing, the authority of the Department of Correction, and places of confinement. It was not intended to, and did not, have any effect on the penitentiary language contained in other provisions of Article 27 as that language related to the applicable period of limitations.

I would affirm the judgment of the Court of Special Appeals.