BLOCHER, Administrator of the Estate of
Judith Ann Schrott v. HARLOW et al.

[No. 232, September Term, 1972.]

*Decided April 11, 1973.*

*Joint motion for rehearing filed May 11, 1973; denied May 25, 1973.*

The cause was argued before BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Edward B. Layne, Jr.*, with whom were *James A. Sullivan* and *McInerney, Layne & McCormick* on the brief, for appellant.

*Joseph J. D'Erasmo*, with whom were *Vivian V. Simpson, Joseph B. Simpson, Jr., H. Algire McFaul* and *Simpson & Simpson* on the brief, for Milton Harlow, Marion Harlow and Linda C. Harlow, part of appellees, and *Edward C. Bell* and *Bell & Reilly* on the brief, for Cecil Thomas King and Ruth Ann King, other appellees.

SMITH, J., delivered the opinion of the Court.

An earlier bout in this affair, which has been going on since 1969, reached this Court under the name of *Harlow v. Blocher*, 257 Md. 1, 262 A. 2d 58 (1970). There Chief Judge Hammond observed for the Court that "the suit below [might] have been instituted too late but the appeal certainly was taken too soon." The appeal in this case was also taken too soon. Because we conclude that the trial judge (Levine, J., now a member of this Court) was correct and the Court of Special Appeals in error on the issue of whether the suit below was instituted too late, we shall express our views under the authority of Maryland Rule 885, being of the opinion that "a decision of such point or question of law by this Court is necessary or desirable for the guidance of the lower court . . . to avoid the expense and delay of another appeal . . . ."

The case grows out of a two car collision which took place in Montgomery County on April 15, 1966. The vehicles were operated by Judith Ann Schrott, of whose estate the appellant, Joseph P. Blocher (Blocher), is the administrator, and Ruth Ann King. Miss Schrott died the same day as a result of the accident. Blocher qualified as administrator or executor of the Schrott estate on

574

September 9, 1966. On February 14, 1969, suit was filed by Linda Harlow, a passenger in the Schrott vehicle, and her parents against Richard James Schrott (the owner of the vehicle operated by Judith Ann Schrott) "individually" and as "father and next friend of Judith Ann Schrott, deceased minor"; Cecil Thomas King (the owner of the King vehicle); and Ruth Ann King. Miss Harlow's counsel then are not her counsel now. As a result of a motion raising preliminary objection filed on behalf of Richard James Schrott "father and next friend of Judith Ann Schrott" contending that he was not a proper party to the proceeding, an amended declaration was filed on May 5, 1969, more than three years after the occurrence of the accident. This for the first time made Blocher as administrator of Miss Schrott's estate a party defendant. Richard James Schrott, Cecil Thomas King, and Ruth Ann King were also named as parties defendant.

Being conscious of the mandate of Rule 342 d 2 that a plea of limitations must be filed within the time required by Rule 307, on May 20 Blocher filed in addition to his general issue plea a plea that said:

"1. That this action was not commenced within six months from the date the defendant, Joseph P. Blocher, duly qualified as the administrator of the Estate of Judith Ann Schrott, deceased minor, as required by Article 93, Section 112 of the Annotated Code of Maryland, which was in effect on April 15, 1966, the date upon which the wrongs complained of in said Declaration are based. (See Attached Exhibit # 1)"

The exhibit to which he referred was a certificate from the Register of Wills for Montgomery County to the effect that "Letters Testamentary" on September 9, 1966, had been "granted and committed unto Joseph P. Blocher the Executor by the last Will and Testament of

the said deceased appointed . . . ."[1] Of course, under the holding in *Chandlee v. Shockley*, 219 Md. 493, 496-97, 150 A. 2d 438 (1959), that the time limitation prescribed by § 112 was a condition precedent to the right to maintain the suit and not merely a limitation upon it and that, therefore, failure to file suit within the time limited could be raised by demurrer, the issue here could have been thus tested if apparent on its face. *See also Smith v. Westinghouse Electric*, 266 Md. 52, 58, 291 A. 2d 452 (1972).

It will be noted that this plea of limitations makes no reference to the limitations imposed by Code (1957) Art. 57, § 1 requiring actions such as this for personal injuries to "be commenced, sued or issued within three years from the time the cause of action accrued . . . ."

On the date of the accident, Code (1957) Art. 93, § 112 required that any "action for injuries to the person to be maintainable against an executor or administrator must be commenced within six calendar months after the date of the qualification of the executor or administrator of the testator or intestate." By Chapter 642 of the Acts of 1966, effective June 1, 1966, the General Assembly added to § 112 a provision permitting such an action "against the estate of a testator or intestate [to] be instituted after the expiration of six months but within the statute of limitation in the event the deceased was covered by an existing insurance policy at the time of the occurrence, the existence of such insurance coverage not being admissible at the trial of the case and the recovery in the event of a judgment against the estate to be limited to the extent of such existing insurance."[2]

Blocher moved on June 4, 1969, for summary judgment based upon his plea of limitations. The Harlows countered, contending that the 1966 change in § 112 was applicable and also making some reference to having been "lulled . . . into a false sense of security in the

---

1. No explanation is given as to why in this proceeding Blocher is referred to as administrator.

2. This provision is carried forward into the "new" Art. 93. *See* Code (1969 Repl. Vol.) Art. 93, § 8-104(c).

belief that suit was not essential to recover damages in this matter, and that no attempt would be made by the defendants, through their claims agents, to defeat a legitimate claim of a blameless plaintiff by a plea of limitations or otherwise . . . ." At the hearing on June 27 Judge Levine announced his intention of granting a partial summary judgment upon the strength of § 112 as it existed prior to the 1966 amendment, citing *Dixon v. Checchia,* 249 Md. 20, 238 A. 2d 247 (1968), to which we shall later allude. In the order on July 7, in accordance with Judge Levine's announcement on June 27, it was provided that pursuant to Rule 501 a prior to any trial on the merits there should be a hearing or trial for the purpose of determining the issue of whether there had been an estoppel and/or waiver of the time limitation contained in § 112. It does not appear that anyone had any thought of asking Judge Levine to assume the role of "dispatcher" mentioned by Mr. Justice Burton in *Sears, Roebuck & Co. v. Mackey,* 351 U. S. 427, 435-36, 76 S. Ct. 895, 100 L. Ed. 1297 (1956), cited by us in *Lang v. Catterton,* 267 Md. 268, 276-77, 297 A. 2d 735 (1972), by making a determination under Rule 605 a as to whether the case was one ripe for review by us. Had he concluded that it was, then he would have made "an express determination that there [was] no just reason for delay" and a final judgment might have been entered by his "express direction for the entry of judgment." Accordingly, the appeal from his order reached us in *Harlow v. Blocher,* 257 Md. 1, and was dismissed.

The issue of waiver or estoppel came on for trial before a Montgomery County jury on October 18, 1971. At the close of the plaintiff-appellees' case Blocher moved for a directed verdict in his favor which was granted. The issues against the Kings remained to be tried. One might suppose that having been once exposed to Rule 605 a through the dismissal of the appeal in *Harlow v. Blocher,* 257 Md. 1, that this time the thought might have occurred to counsel for the parties that it might be wise to make inquiry of the trial judge as to whether in his

role of "dispatcher" he regarded the matter as ripe for review on appeal, but such was not the case. An appeal to the Court of Special Appeals was entered by the plaintiffs, Milton Harlow, Marion Harlow, and Linda C. Harlow, and by the defendants, Cecil Thomas King and Ruth Ann King, notwithstanding the fact that the issues against the Kings remained to be tried.[3] It thus would appear that counsel did not take seriously our chiding of the bar for its disregard of the rules and our advice to the bar that the rules are not guides to the practice of law, but precise rubrics established to promote the orderly and efficient administration of justice which are to be read and followed, *Robinson v. Bd. of County Comm'rs*, 262 Md. 342, 346, 278 A. 2d 71 (1971) ; *Isen v. Phoenix Assurance Co.*, 259 Md. 564, 570, 270 A. 2d 476 (1970) ; *Lewis v. Germantown Insurance Company*, 251 Md. 535, 536-37, 248 A. 2d 468 (1968) ; and *Brown v. Fraley*, 222 Md. 480, 483, 161 A. 2d 128 (1960).

In the Court of Special Appeals the Harlows contended once more that Judge Levine had erred in his conclusion that Art. 93, § 112 as it existed prior to June 1, 1966, was applicable to this case, and that he erred in failing to submit to the jury the question of whether the administrator through his agents had waived or was estopped from asserting limitations.

In *Harlow v. Schrott*, 16 Md. App. 31, 294 A. 2d 349 (1972), the Court of Special Appeals held that Judge Levine erred in his ruling relative to § 112. Accordingly, it did not reach the question of waiver or estoppel. It took cognizance of the violation of Rule 605 a, but proceeded to decide the matter stating that "at oral argument of the case, all parties urged that [the court] consider the limitations question on its merits, rather than to dismiss the appeal as premature." Accordingly, it vacated the order granting the motion for summary judgment and remanded the case for further proceedings in accordance

---

3. By Chapter 99 of the Acts of 1970 appellate jurisdiction over motor vehicle torts was transferred to the Court of Special Appeals.

with its opinion. Blocher applied to us for the writ of certiorari which we granted.

Under Rule 605 a, as we have previously indicated citing *Sears, Roebuck & Co. v. Mackey,* 351 U. S. 427, the trial judge is expected to be the "dispatcher" and "to determine, in the first instance, the appropriate time *when each 'final decision'* upon 'one or more but less than all' of the claims in a multiple claims action is ready for appeal." (Emphasis that of Mr. Justice Burton in *Sears.*) No such determination was made here. The order appealed from was not a final order nor does it fall within the category of interlocutory orders from which an appeal may be maintained. Therefore, the appeal must be dismissed. *Lang v. Catterton* and *Harlow v. Blocher,* both *supra.* It is elementary that parties may not confer appellate jurisdiction by consent upon this Court or the Court of Special Appeals. Accordingly, we shall remand the case to the Court of Special Appeals for the purpose of entering an order dismissing the appeal.

Because we believe the Court of Special Appeals erred in its conclusion relative to the applicability of the 1966 amendment to Art. 93, § 112, to this action, we shall express our views "for the guidance of the lower court . . . to avoid the expense and delay of another appeal." Rule 885. We shall not address ourselves to the issue of whether the matter of waiver or estoppel should have gone to the jury, that not having been covered in the petition for the writ of certiorari and no cross-petition having been filed. *Walston v. Sun Cab Co.,* 267 Md. 559, 298 A. 2d 391 (1973). If the trial judge erred upon that subject, that matter will be ripe for review when a final judgment is entered, since upon a final judgment "every interlocutory order which has previously been entered in the action shall be open to review by [the Court of Special Appeals] unless an appeal has theretofore been taken from such interlocutory order and been decided on the merits by [that] Court." Rule 1087 and *Melbourne v. Griffith,* 263 Md. 486, 487, 283 A. 2d 363 (1971).

In our view, Judge Levine correctly concluded that this case was controlled by *Dixon v. Checchia*, 249 Md. 20, 238 A. 2d 247 (1968). There suit was filed on September 28, 1966. The accident occurred on February 16, 1965. Checchia died on October 25, 1965, and his administrator was appointed on December 10, 1965. As Judge Barnes put it for the Court, it was there contended "that an amendment to Code (1957), Article 93, Section 112, effective June 1, 1966, extending, in certain instances, the time in which an action [might] be instituted against an executor or administrator [was] applicable to an action arising out of an accident occurring prior to the effective date of the amendment . . . ." The Court pointed out that if the pre-1966 section applied the action had to be filed by June 10, 1966, while if the 1966 amendment effective June 1, 1966, applied, the declaration filed September 28, 1966, was timely.

The Court referred to *Janda v. General Motors*, 237 Md. 161, 205 A. 2d 228 (1964), where Judge Hammond noted that "[v]arious rules have been formulated by the courts to aid in determining whether a statute is to be applied retrospectively or prospectively." It then quoted the second of the rules set forth in *Janda:*

"(2) Ordinarily a statute affecting matters or rights of substance will not be given a retrospective operation as to transactions, matters and events not in litigation at the time the statute takes effect:

'* * * unless its words are so clear, strong and imperative in their retrospective expression that no other meaning can be attached to them, or unless the manifest intention of the Legislature could not otherwise be gratified. * * * (citing cases). An amendatory Act takes effect, like any other legislative enactment, only from the time of its passage, and has no application to prior transactions, un-

less an intent to the contrary is expressed in the Act or clearly implied from its provisions.' *Tax Comm. v. Power Company,* 182 Md. 111, 117." *Id.* at 168-69.

The Court then said:

"In *Chandlee v. Shockley,* 219 Md. 493, 150 A. 2d 438 (1959), Judge (now Chief Judge) Hammond pointed out that the period of limitations in Section 112 is set forth in the statute and is considered a part of the grant of the right itself. The limitation period in Article 93, Section 112 is a part of the substantive right that did not exist at common law but is wholly conferred by the statute. See *Chandlee, supra.* We think rule (2) is controlling." *Id.* at 249 Md. 24.

In *Schrott* the Court of Special Appeals said it was not clear from the opinion in *Dixon* whether we intended there to hold the date of accident, the date of death, or the date of qualification of the administrator to be controlling. We shall set any doubt upon that subject at rest by saying that in the context of that case it was the Court's intention to hold that the applicable statute was that in effect on the date the injury was sustained.

A thought similar to that in *Janda* is expressed with particular reference to the issues at hand in 1 Sutherland, *Statutory Construction* § 22.36 (4th ed. Sands 1972) where it is said with reference to retroactive operation:

"In accordance with the rule applicable to original acts, it is presumed that provisions added by the amendment affecting substantive rights are intended to operate prospectively. Provisions added by the amendment that affect substantive rights will not be construed to apply to transactions and events completed prior to its enactment unless the legislature has ex-

pressed its intent to that effect or such intent is clearly implied by the language of the amendment or by the circumstances surrounding its enactment." *Id.* at 200.

Examination of Chapter 642 of the Acts of 1966 by which this amendment to § 112 was effected shows nothing in the act itself to indicate an intent that it be applied retrospectively nor is a clear implication to that effect to be found in the language of the amendment. As is so often the case in Maryland, we have no legislative history. We know of no circumstances surrounding its enactment which would mandate retrospective application of the amendment.

There is a substantial body of law to the effect that where a limitation period is stipulated in a statute creating a cause of action it is not to be considered as an ordinary statute of limitations, but is to be considered as a limitation upon the right as well as the remedy, with the result that as to causes of action already accrued at the time of the enactment of a subsequent statute enlarging the limitation period on such causes of action the subsequent statute will not be held applicable so as to extend or enlarge the original limitation period, particularly where no legislative intent to give the subsequent statute a retroactive application clearly appears from its language. Of interest in this regard is the opinion of Judge Parker in *Link v. Receivers of Seaboard Air Line Ry.*, 73 F. 2d 149 (4th Cir. 1934), where he said for the court:

"It is true that statutes relating to practice and procedure generally apply to pending actions and those subsequently instituted, although the cause of action may have arisen before. [Citing cases.] But these are not mere procedural provisions of statutes with which we are dealing. The statute of 1882, as well as that of 1930, creates in one who obtains a judg-

ment against a railroad company a right superior to the rights of mortgagees in the railroad property, but only upon condition that the action for obtaining the judgment is instituted within the time limited by the act. The condition thus prescribed is not, therefore, a mere regulation of procedure, but a condition annexed to the enjoyment of the right, and is not at all different from similar provisions in statutes creating a cause of action. As to these, it is well settled that failure to bring the action within the time limited destroys the right itself, and not merely the remedy. [Citing cases.]

"The change made by the statute of 1930, therefore, was not a mere change in procedure, but a change affecting substantive rights; and, as to such statutes, the rule is well settled that they will not be given a retroactive effect unless it clearly appears that the Legislature so intended. [Citing cases.] And there is nothing here to show that the Legislature intended the statute of 1930 to have any retroactive effect. On the contrary, the language of the statute is entirely prospective." *Id.* at 151.

*See also Callahan v. Chesapeake & O. Ry.,* 40 F. Supp. 353 (E.D. Ky. 1941); *Bretthauer v. Jacobson,* 79 N. J. Law 223, 75 A. 560 (1910); *Wall v. Gillett,* 61 N. M. 256, 258, 298 P. 2d 939 (1956); 51 Am. Jur. 2d *Limitation of Actions* § 41 (1970); 53 C.J.S. *Limitations of Actions* § 4 a at 915 (1948); and Annot., *Limitation—Enlarging Period* 79 A.L.R.2d 1080, 1109-1113 (1961).

There accrued to Miss Harlow at the time of the Schrott death an inchoate right of action against a personal representative to be appointed or to qualify. This right would mature as soon as that personal representative did qualify. Miss Harlow possessed the tools under Code (1957, 1964 Repl. Vol.) Art. 93, § 34 to cause this right to burst into full bloom by making an application

as a creditor for letters of administration.[4] *Burket v. Aldridge, Adm'r*, 241 Md. 423, 427, 216 A. 2d 910 (1966) ; *Barton v. Tabler*, 183 Md. 227, 231, 37 A. 2d 266 (1944), and cases there cited. The personal representative thus appointed would be vested with title to the personal estate of the decedent relating back to the time of death. 1 Sykes, *Probate Law and Practice*, § 523 (1956).

The Court in *Burket* recognized that the date of the tort was applicable in determining when a cause of action accrued. It will be recalled that Code (1957) Art. 57, § 1 provides as to most tort actions that suit shall be begun "within three years from the time the cause of action *accrued* . . . ." (Emphasis added.) There the plaintiffs did not know of the tortfeasor's death when suit was instituted against him barely within three years of the time the cause of action arose. More than three years after it arose his personal representative was sued. It was the contention of the plaintiff that when a tortfeasor died before the expiration of the three year limitation period the cause of action also died, but a new cause of action against the administrator was created by § 112 with a six month limitation period as that section then stood. The Court said:

> "Burket contends that Section 112 creates a new cause of action in the injured party against the personal representatives where the death of the tort-feasor occurs within the three year period and before suit has been filed against him. It is true, as *Chandlee* states, that Section 112 created a liability which did not exist in common law; without the statute there would have been no right of action. But this is not to say that the creation of the right to sue the personal representative superseded the Statute of Limitations applicable under Article 57, Section 1." *Id.* at 431.

4. Found in the "new" Art. 93 in § 5-104(a)(9).

In *Schrott* the Court of Special Appeals although holding that the cause of action accrued as of the date the administrator was appointed recognized insofar as the application of the three year limitation period was concerned that the cause of action accrued on the date of the accident. It said:

> "It was, in essence, the legislative purpose in amending Section 112 to except the decedent's insurance company from the six-month limitation period and thus to give the injured party three years from the date of the accident in which to file suit and recover an amount limited to the insurance coverage." *Id.* at 41.

As Judge Barnes put it for the Court in *Pan Am. Sulphur v. State Dep't*, 251 Md. 620, 627, 248 A. 2d 354 (1968), "One of the cardinal rules of statutory construction is that wherever possible an interpretation should be given to statutory language which will not lead to absurd consequences." To hold that the claim accrues on the date of accident for the purpose of the three year statute of limitations embodied in § 112 and to hold that it accrues on the date of the appointment of the administrator for the purpose of determining whether the amended § 112 applies to this incident appears to us to be barred by this rule. We see yet another anomalous result that might stem from a determination that the date of grant of letters of administration is the significant date in determining the applicability of the amended statute. If in this instance the driver of the King vehicle had also been killed in the accident and letters of administration had been granted on her estate prior to June 1, 1966, then under such an interpretation we would have a result where with both drivers killed at the same time in the same accident the plaintiffs would be required to sue one within the six month provision of § 112 as it existed prior to June 1, 1966, but permitted to sue within the three year statute of limitations provision placed in § 112 by the 1966 amendment as to the other

driver, letters having been granted subsequent to June 1, 1966.

When we consider *Janda, Dixon,* the language in Sutherland which we have quoted, the complete absence of anything in the statute to indicate an intent that the amendment operate retrospectively, the decisions elsewhere relative to extending or enlarging the original limitation period where that period is a part of the substantive remedy as here, and these anomalous results, it becomes clear to us that the 1966 amendment of § 112 is not applicable to this case.

> *Judgment of the Court of Special Appeals reversed and case remanded to the Court of Special Appeals for the passage of an order dismissing the appeal and remanding the case to the Circuit Court for Montgomery County for further proceedings consistent with this opinion; appellees to pay the costs in this Court and in the Court of Special Appeals.*