829 A.2d 1036

**STATE of Maryland**

v.

**David Erwin STOWE.**

No. 136, Sept. Term, 2000.

Court of Appeals of Maryland.

Aug. 7, 2003.

438

Gary E. Bair, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for petitioner.

David A. Martella (Barry H. Helfand, on brief), of Rockville, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, JJ.

BELL, Chief Judge.

In *Massey v. State*, 320 Md. 605, 579 A.2d 265 (1990), this Court considered, in the context of a prosecution for welfare perjury, the appropriate limitations period for misdemeanor prosecutions, and, in particular, those involving "penitentiary misdemeanors." When that case was decided, the general statute of limitations for misdemeanors was contained in Md.Code (1974, 1989 Repl.Vol.), § 5–106 of the Courts and Judicial Proceedings Article. Pursuant to that section, except

as it otherwise provided, "a prosecution for a misdemeanor not made punishable by confinement in the penitentiary by statute shall be instituted within one year after the offense was committed." Therefore, the statute of limitations for a misdemeanor was one year, unless another period of limitations was specifically provided or the misdemeanor was "made punishable by confinement in the penitentiary." *Id.* at 611, 579 A.2d at 268.[1] As this Court put it, "[m]isdemeanors punished by confinement in the penitentiary are excluded from the [one year limitation] provisions of this section of the statute, and are placed along with felonies." *Id.,* (quoting *Schaumloeffel v. State,* 102 Md. 470, 472, 62 A. 803, 804 (1906) and citing *Archer v. State,* 145 Md. 128, 137–138, 125 A. 744, 747 (1924) (noting that these misdemeanors are "class[ed] ... with felonies").

---

1. By way of historical background, this Court explained:

"At common law, there was no general period of limitations applicable to criminal proceedings. 1 Chitty, *A Practical Treatise On The Criminal Law* 160 (1819); Hochheimer, *The Law Of Crimes And Criminal Procedure* 78 (2d Ed.1904). In Maryland, many criminal offenses are subject to specific limitations periods by statute. *See, e.g.,* Code (1974, 1989 Repl.Vol.), § § 5–106(b)(1) of the Courts and Judicial Proceedings Article (two year limitations period for prosecutions under the vehicle code for unlawfully using a driver's license), 5–106(e)(3) (two year limitations period for criminal malfeasance, misfeasance, or nonfeasance in office by State officers), and 5–106(g) (three year limitations period for welfare fraud).

"In the absence of a specific statutory limitations period for a particular offense, the State may institute a prosecution for a felony at any time. *Greco v. State,* 307 Md. 470, 478, 515 A.2d 220, 224 (1986).

"As to misdemeanors, the General Assembly over one hundred years ago mandated: "No prosecution ... shall be commenced for ... any misdemeanor except those punished by confinement in the penitentiary, unless within one year from the time of the offence committed." Code (1860), Art. 57, § 10. At that time, and for many years thereafter, it was common for criminal statutes to designate not only the length of incarceration for a criminal conviction but also the place where the defendant would serve the sentence. Trial judges would sentence convicted defendants to the particular institutions in accordance with the statutory authorization. Presumably, what the Legislature considered to be the most serious misdemeanors were made punishable by confinement in the state penitentiary. Sentences for misdemeanors apparently deemed less serious were by statute to be served in the county jails or state institutions such as the house of correction." *Massey v. State,* 320 Md. 605, 610–11, 579 A.2d 265, 267 (1990).

Moreover, the Court noted that it was the fact that imprisonment in the penitentiary was statutorily authorized, rather than the sentence actually imposed, that determined whether limitations was unlimited or one year. *Id.* at 611–12, 579 A.2d at 268, (citing, *inter alia, Archer,* 145 Md. at 136, 138, 125 A. at 747–748).

Pursuant to (1957, 1985 Repl.Vol., 1989 Cum.Supp.), Art. 88 A, § 62(a), welfare perjury was defined by reference to the offense of perjury, and a person committing the offense, "upon conviction therefor is subject to the penalties provided by law for perjury." Md.Code (1957, 1987 Repl.Vol.) Article 27, § 439 prescribed, as the penalty for perjury, "imprisonment in the jail or penitentiary for not more than ten years." Consequently, the Court of Special Appeals, to which the State appealed the trial court's dismissal of the welfare perjury charge against Massey, concluded that welfare perjury was a penitentiary misdemeanor and, for that reason, excluded from the one year limitation for misdemeanors generally. *Massey,* 320 Md. at 609, 579 A.2d at 267. And because there was not otherwise provided in § 5–106 a specified period of limitations applicable to that offense, a prosecution for welfare perjury was not subject to any limitations period. *Id.*

We granted Massey's petition for writ of certiorari challenging the propriety of an unlimited period of limitations for welfare perjury when allegedly greater offenses arising out of the same acts were subject to a specified, and therefore shorter, limitations period. We added two questions, one of which addressed the meaning of the phrase, "not made punishable by confinement in the penitentiary by statute" in light of Article 27, § 690, governing the sentencing and confinement of persons convicted of crime. *Id.* at 609–10, 579 A.2d at 267. As enacted by Ch. 556 of the Acts of 1916, Article 27, § 654, the predecessor of § 690, provided:

"When any person is convicted, before any Circuit Court of any County, or the Criminal Court of Baltimore, of any crime ... punishable by any imprisonment whatsoever ... said Court may, in its discretion, sentence such person to

imprisonment in jail or in the Maryland House of Correction or in the Maryland Penitentiary.

"It is expressly provided, however, that nothing in this Section shall be construed to add to, alter or change the class of crimes, as they existed before this Act takes effect, with respect to the right of challenge or with respect to the fees in criminal cases, or to make any crime infamous, by reason of any sentence to the Maryland Penitentiary, or transfer thereto, which would not have been an infamous crime before this Act takes effect. . . ."

We explained that the first paragraph gave trial judges discretion in the sentencing of a defendant convicted of a crime for which imprisonment was an option, to specify the institution in which the defendant would be confined, thus, permitting a defendant convicted of a crime for which the statute specified confinement in the penitentiary, to be sentenced to imprisonment elsewhere. *Id.* at 612, 579 A.2d at 268.

The second paragraph, the Court pointed out, indicated that the sentencing flexibility given the judges "should not affect the classification of crimes based upon the statutorily prescribed place of confinement," *id.*, and "was largely the reason for this Court's holding in *Archer v. State, supra,* 145 Md. at 137, 125 A. at 747. In that case, the Court held that the 1916 statute was not intended to change the operation of Art. 57, § 11 [the predecessor of § 5–106(a)], concerning the periods of limitations for misdemeanor prosecutions." *Id.* Specifically, the Court said (145 Md. at 137–38, 125 A. at 747):

"There is certainly nothing in either the titles or the bodies of the Acts of 1916 and 1918 to indicate that in passing those Acts the Legislature meant to practically repeal section 11 of article 57 of the Code, which would be the result of the construction contended for by the State. On the contrary, it is perfectly obvious that its purpose was to create a new agency to deal with the State's penal institutions, and to provide for the convenient shifting of convicts from one to the other without regard to the grade of the crime.

"Section 654 expressly provides

'that nothing in this section shall be construed to add to, alter or change the *class* of crimes as they existed before this act takes effect, with respect to the right of challenge or with respect to the fees in criminal cases, or to make any crime infamous by reason of any sentence to the Maryland Penitentiary, or transfer thereto, which would not have been an infamous crime before the act takes effect.'

"The words, 'and punishable by any imprisonment whatsoever or by fine and imprisonment (other than imprisonment in default of fine)' show that it was not intended to change the grade of any crime, but to leave that as it was already fixed by existing law or might be fixed by future legislation.

"Article 57, section 11, in excepting from the amnesty given after one year to ordinary misdemeanors those punished by confinement in the penitentiary, clearly meant to *class* these with felonies; and in *Schaumloeffel v. State,* 102 Md. 470, 62 A. 803, that intention was recognized. But the provisions of section 654 of article 27 expressly negative the idea that *that* section was intended to 'place along with felonies' misdemeanors not so classed by the then existing law or by subsequent legislation."

Although there were amendments to § 654 over the years, and the section was renumbered § 690, the changes were rather minor and, in any event, the second paragraph remained unchanged. 320 Md. at 613, 579 A.2d at 269. A constant was "the concept of sentences to and confinement in specific state institutions. *Id.*

Major changes in § 690 occurred in 1967 with the passage of Ch. 695 of the Acts of 1967. *Id.* Section (b) of new § 690 provided:

"(b) Notwithstanding any of the provisions of this Article or any other law to the contrary, on and after June 1, 1967, judges, in the sentencing of convicted persons (a) for any offense for which the provisions of this Article or any other law requires the imprisonment to be served at any one of those institutions enumerated in Section 689 of this Article

or (b) any offense for which prior to June 1, 1967, the sentence was made for whatever reason to one of those institutions in Section 689, shall in all such cases sentence such persons to the jurisdiction of the Department of Correction. All such persons shall be committed to the custody of the Commissioner of Correction and delivered to him for imprisonment. Thereafter all such persons shall be held, confined in, assigned to or transferred to such of the institutions and facilities under the jurisdiction of the Department as the Department from time to time may order.

"Any person sentenced prior to June 1, 1967 to any one of the institutions and facilities under the jurisdiction of the Department may, after such date, and not withstanding such sentence, be held, confined in, assigned to or transferred to such of these institutions and facilities as the Department may from time to time order."

In addition to limiting the length of sentences permitted to be made to the Department of Correction, the legislation amended sections of Article 27 relating to the Department of Correction by deleting references to the various state institutions and replacing them with "Jurisdiction of the Department of Correction," "Department of Correction," etc. *Id* at 614–15, 579 A.2d at 269–70. Having repealed the second paragraph of former § 690, no similar language was included in the new section. *Id.* "[P]erhaps the most significant change," *id.*, was the enactment of new § 690(d), employing a commonly used drafting device to amend every statutory provision relating to the sentencing and confinement options. *Id.* at 615, 579 A.2d at 270. Pursuant to that section,

"Whenever in this Article or any other law reference is made to the sentencing or confinement of prisoners to any of the institutions enumerated in Section 689, such reference shall after June 1, 1967, be construed to mean sentencing or confinement to the jurisdiction of the Department rather than to any particular institution or facility of the Department."

The Court described the effect of the legislation as follows:

"Ch. 695 repealed old Art. 27, § 690, and enacted an entirely new Art. 27, § 690. The new statute largely removed from judges a role in deciding where a person sentenced to imprisonment should be confined. Moreover, in place of the concept of a sentence to a particular state institution, or a confinement in a particular state institution, the new statute substituted the concepts of sentence to and confinement under 'the jurisdiction of the Department of Correction' or 'the custody of the Commissioner of Correction.' "

*Id.* at 614, 579 A.2d at 269. Also:

"The conclusion is inescapable that Ch. 695 of the Acts of 1967 effected a substantial change with respect to the appropriate period of limitations for misdemeanor prosecutions. As previously discussed, under former Art. 57, § 11, and present § 5–106(a) of the Courts and Judicial Proceedings Article, a misdemeanor is subject to a one year limitations period unless it is 'punishable by confinement in the penitentiary by statute.' After Ch. 695 of the Acts of 1967 became effective on June 1, 1967, no misdemeanors were 'punishable by confinement in the penitentiary by statute.' Although persons could and still can be confined in the penitentiary as a matter of fact, the sentence and confinement 'by statute' was to the 'jurisdiction of the Department of Correction' after June 1, 1967. This was the thrust of Ch. 695 as a whole. More importantly, new Art. 27, § 690(d), now § 690(e), had the effect of amending every statute referring 'to the sentencing . . . of prisoners to' the penitentiary and substituting for 'the penitentiary' the words 'jurisdiction of the Department of Correction.' "

*Id.* at 617, 579 A.2d at 271.

The State argued that the limitations statute and § 690 serve different and distinct functions, the former dealing with the time for initiating a prosecution and the latter with sentencing and confinement. We rejected that argument, noting their significant interrelationship in one respect:

"The operation of the exception to the one year period of limitations for misdemeanor prosecutions, contained in § 5–106(a), is entirely dependent upon the sentencing provisions in criminal statutes. There is no statute, and never has been one, classifying offenses as 'penitentiary misdemeanors' for limitations purposes, which is independent of the statutory sentencing provisions associated with particular offenses."

*Id.* at 618, 579 A.2d at 271.

The Court held that welfare perjury, like perjury, also a misdemeanor, has no specific limitations period and, therefore, is subject to the one year period of limitations prescribed by § 5–106. *Id.* at 621, 579 A.2d at 273. We explained:

"The statutory provision concerning perjury, as presently set forth in Art. 27, § 439, of the 1957 edition of the Annotated Code of Maryland, literally reads that one convicted of perjury is subject 'to imprisonment in the ... penitentiary for not more than ten years.' If that codified provision had literally read that one convicted of perjury is subject 'to imprisonment ... under the jurisdiction of the Division of Correction for not more than ten years,' this case would likely not be here. It is doubtful that the State would have appealed from the circuit court's dismissal of the welfare perjury charges. Nevertheless, as a matter of law, the statute punishing perjury does provide that one convicted of the offense is subject 'to imprisonment ... under the jurisdiction of the Division of Correction for not more than ten years.' The former reference to the "penitentiary" is not simply unamended language which has become obsolete for sentencing purposes. Rather, the word 'penitentiary' has been amended out of the statute. Art. 27, § 690(e), formerly § 690(d), states that '[w]henever in this article or any other law reference is made to the sentencing or confinement of prisoners to [the penitentiary] ..., such reference shall be construed to mean sentencing or confinement to the jurisdiction of the Division [of Correction]....' As previously discussed, this is a drafting technique regularly used by the General Assembly to change statutes. Re-

fusal to give effect to this drafting technique could have grave consequences in the application of a multitude of statutory provisions."

*Id.* at 620–21, 579 A.2d at 272–73.

The General Assembly at its 1991 session, being dissatisfied with the Court's interpretation of its action in amending the provisions pertaining to the sentencing and confinement of persons convicted of crimes, enacted Ch. 371 Acts 1991, "[for] the purpose of . . . establishing that notwithstanding Article 27, § 690(e) of the Code or the decision of the court in *Massey v. State*, 320 Md. 605, 579 A.2d 265 (1990), if a statute provides that a misdemeanor is punishable by imprisonment in the penitentiary, the State may institute a prosecution for the offense at any time." Section 2 of that Chapter, provided that "there is no statute of limitations for a misdemeanor punishable by imprisonment in the penitentiary, notwithstanding any holding or dictum to the contrary in *Massey v. State*, 320 Md. 605, 579 A.2d 265 (1990)." To accomplish that result, § 1 of Chapter 371 repealed each of the statutes which *Massey* said had effectively been amended to excise the word "penitentiary" and re-enacted each of them with the word "penitentiary" put back in. It also provided that "this Act shall take effect July 1, 1991."

## I.

David Erwin Stowe, the appellee, on March 13, 2000, was charged, pursuant to Maryland Code (1957, 1998 Repl.Vol.), Article 27, § 554,[2] with one count of unnatural and perverted

---

2. Maryland Code (1957, 1998 Repl.Vol.), Article 27, § 554 provides:

"Every person who is convicted of taking into his or her mouth the sexual organ of any other person or animal, or who shall be convicted of placing his or her sexual organ in the mouth of any other person or animal, or who shall be convicted of committing any other unnatural or perverted sexual practice with any other person or animal, shall be fined not more than one thousand dollars ($1,000.00), or be imprisoned in jail or in the house of correction or in the penitentiary for a period not exceeding ten years, or shall be

sexual practices.[3] He moved to dismiss the criminal information[4] arguing that it "is barred by the Statute of Limitations." The trial court granted the motion and dismissed the criminal information, ruling that, the crime charged having occurred over forty years ago, its prosecution was precluded by limitations, which, for that offense and under the circumstances, was one year. It explained:

"At the time the events [charged] occurred, there was no statute of limitations for this penitentiary misdemeanor; In 1967, legislative action resulted in the creation of a one-year statute of limitations for penitentiary misdemeanors (see *Massey v. State*, 320 Md. 605, 579 A.2d 265 (1990)); Curative legislative action in 1991 removing the one-year statute of limitations on penitentiary misdemeanors cannot support prosecution of this case because it would violate *ex post facto* prohibitions. The one-year statute of limitations applicable to this charge has run."

The State timely noted an appeal to the Court of Special Appeals and also filed, pursuant to Maryland Rule 8–301,[5] a

---

both fined and imprisoned within the limits above prescribed in the discretion of the court."
This provision was initially re-codified at Maryland Code (2002) § 3–320 of the Criminal Law Article. Ch. 26 of the Acts of 2002. As a result of subsequent amendments, see Ch. 266, § 1 of the Acts of 2002 and Ch. 278, § 1 of the Acts of 2002, it is now codified as § 3–322.

3. The charges were brought by Wellford Thomas Harrison Jr, an adult, fifty three (53) year old man, and the facts on which the charges are based are uncontroverted. The sexual abuse, constituting the perverted practices, consisted of fellatio, either performed on Harrison by the appellee or performed on the appellee by Harrison. These acts of abuse occurred on numerous occasions, beginning while Harrison was a boy scout and the appellee a scout troop leader and continuing when the appellee became Harrison's tutor.

4. After being charged in the District Court of Maryland, sitting in Montgomery County, the appellee prayed a jury trial, whereupon the case was transferred to the Circuit Court for Montgomery County and the appellee was charged by information. In that court, the appellee moved to dismiss the charge, arguing it "is barred by the Statute of Limitations."

5. Md. Rule 8–301 provides, in pertinent part:

petition for writ of certiorari with this Court. Before any proceedings in the intermediate appellate court, this Court granted the petition, *State v. Stowe*, 362 Md. 624, 766 A.2d 147 (2001), to consider whether "the crime of unnatural and perverted sexual practices [is] subject to a one-year statute of limitations where the crime occurred between March 1, 1958 and July 31, 1960?" We shall affirm.

## II.

In this Court, the appellant, the State, notes that, between 1958 and 1960, when the appellee's conduct, the alleged criminal acts occurred, no limitations period was applicable to the misdemeanor crime of unnatural and perverted sexual practice. Moreover, in 2000, when the appellee was charged, there likewise was no applicable statute of limitations. Thus, the State argues, to apply either the law in force when the alleged crime was committed or the current law puts the appellee in no different position than he was in some forty years ago. In refutation of the applicability of the *ex post facto* principle, it asserts:

"To try Stowe today does not subject him to criminal liability for something that was not criminal at the time of his conduct, the crime has not been aggravated, the punishment has not increased, and no less evidence is required to convict him now than would have been required in 1960."

The appellee, on the other hand, relies on *Massey, supra*, 320 Md. 605, 579 A.2d 265. As a result of that case, he argues that, after 1967, and until the Legislature amended the statutory scheme effecting that result, all misdemeanors, whether penitentiary misdemeanors or not, were subject to a one-year

---

"Method of securing review—Court of Appeals.
(a) Generally. Appellate review by the Court of Appeals may be obtained only:
"(1) by direct appeal or application for leave to appeal, where allowed by law;.
"(2) pursuant to the Maryland Uniform Certification of Questions of Law Act; or.
"(3) by writ of certiorari in all other cases."

statute of limitations. Moreover, he contends, the Legislature applied that one-year limitations period retrospectively to all sentences imposed prior to June 1, 1967. Therefore, as of that date, 1967, the crime of unnatural and perverted practice was subject to a one-year period of limitations. Accordingly, as of that date, the State had one year to prosecute him for the acts he allegedly committed between 1958 and 1960. "As neither the complainant nor the State came forward to charge [respondent] within that one year, they are now barred from initiating a prosecution 32 years later, he concludes."

### III.

### A.

It is true, to be sure, that, at the time the conduct, with which the appellee has been charged, allegedly occurred, the statute then in effect permitted the court to sentence a defendant convicted of committing an unnatural or perverted sexual act against a minor to "imprison[ment] in jail or in the House of Correction or in the Penitentiary." As the Court pointed out in *Massey*, then, it was the rule that judges would prescribe both the length of the sentence to be served and the place at which that service was to occur, 320 Md. at 610, 579 A.2d at 267, and that it was the authorization in the statute for the judge to designate the penitentiary as a place for service of the sentence, not the sentence itself, that determined the nature of the offense; "what the Legislature considered to be the most serious misdemeanors were made punishable by confinement in the state penitentiary." *Id.* at 610–11, 579 A.2d at 267. It was thus a "penitentiary misdemeanor," *Massey*, 320 Md. at 609, 579 A.2d at 267; *In re Anthony R.*, 362 Md. 51, 73, n. 11, 763 A.2d 136, 148 n. 11 (2000), as to which there was no statute of limitations.

As we have seen, in 1967, the ability of trial judges to designate the place of confinement was terminated and the length of the sentences to the Department of Correction curtailed. And this, without a disclaimer as had accompanied the legislation that had given them this flexibility. After June

1 of that year, pursuant to the amendments to the sentencing and confinement provisions of § 690, they could only sentence a defendant to the "jurisdiction of the Department of Correction," *Massey,* 320 Md. at 614, 579 A.2d at 269, and only for a term, since increased, of three (3) months or more. The Department of Correction, therefore, was charged with the sole responsibility of deciding where a particular defendant would be confined, both before June 1, 1967, notwithstanding the designation of the sentencing judge, and after. *Id.* In addition, using a common drafting technique, *id.* at 615–16, 579 A.2d at 269–70, the Legislature, in effect amended every statutory provision relating to the sentencing to, or confinement of persons in, the penitentiary, house of correction, etc., and substituted the words "jurisdiction of the Department" for the words "penitentiary," "house of correction," and the like. As a result, the *Massey* Court concluded that since, "[a]fter Ch. 695 of the Acts of 1967 became effective on June 1, 1967, no misdemeanors were 'punishable by confinement in the penitentiary by statute,' *id.* at 617, 579 A.2d at 271, there was no longer a distinction between ordinary misdemeanors and penitentiary ones. *Id.* at 621, 579 A.2d at 273.

Applying that reasoning to the case *sub judice* produces the same result. When the Legislature made the amendments detailed in *Massey,* as in the case of welfare perjury, the unnatural and perverted practices statute no longer authorized punishment by confinement in the penitentiary and the trial judges lost the authority to designate the place of confinement for defendants convicted of unnatural and perverted sex acts. As a result, as of June 1, 1967, the statute of limitations for the crime of unnatural and perverted sex act was one year, which, in the absence of the initiation of a prosecution, as in this case, expired June 1, 1968.

Relying on *Johnson v. United States,* 529 U.S. 694, 701, 120 S.Ct. 1795, 1801 146 L.Ed.2d 727, 736 (2000) ("Absent a clear statement of that intent, we do not give retroactive effect to statutes burdening private interests."), the State argues that the 1967 amendments do not operate retroactively to affect the statute of limitations for acts occurring prior to their

effective date. It notes that § 690(b) stated expressly that "on or after June 1, 1967, judges ... shall in all such cases sentence such persons to the jurisdiction of the Department of Correction." Aware of the significance that the *Massey* Court placed on the enactment of § 690(d), a new section, the State calls attention to the fact that, in that section, the substitution of the Department of Correction for the references to the various institutions was made to occur "after June 1, 1967."

The State is wrong. The appellee directs our attention to the second paragraph of § 690(b). That provision, as we have seen addresses the situation in which the defendant was sentenced prior to the effective date of the statute to "any one of the institutions and facilities under the jurisdiction of the Department." As to such defendants, "after such date, and notwithstanding such sentence, [they may] be held, confined in, assigned to or transferred to such of these institutions and facilities as the Department may from time to time order." The appellee thus submits:

"Thus, the legislature clearly made the new law retroactively applicable to all sentences imposed prior to June 1, 1967. In other words, to the extent that any sentence of any judge, in the future or in the past, assigns a defendant to a particular institution or penitentiary, such sentence shall now be construed as being to the Division of Correction. The law had to be retroactive for a very practical reason. The judicial system could not have judges and the Division of Correction independently deciding where inmates shall be held."

The State next asserts that the *Massey* analysis was wrong and that, therefore, at the next legislative session, the General Assembly "overruled" the decision and "re-affirmed that misdemeanors punishable by imprisonment in the penitentiary are not subject to any statute of limitations." While the Legislature did revisit the issue of the limitations period for penitentiary misdemeanors and made amendments that resulted in such amendments having no statute of limitations and, thus, permitting them to be prosecuted at any time, it is not true that *Massey* was overruled. To the contrary, the Legisla-

ture actually accepted the *Massey* analysis. To achieve the result of ensuring that penitentiary misdemeanors was not subject to any limitations period, it repealed each of the statutes once authorizing a judge to order imprisonment in the penitentiary, in which the reference to "penitentiary" had been replaced with "Department of Correction" as a result of the 1967 amendments and reenacted them with the word, "penitentiary" put back in. Thus, in point of fact, the effect of the 1991 amendment was curative, *i.e.*, it recognized the effect of what the legislature did in 1967, and acted to reinstate the original "no statute of limitations." Nevertheless, from 1967 to 1991, penitentiary misdemeanors had the same statute of limitations as all other misdemeanors, one year.[6]

We agree with the appellee, considering how inextricably the sentencing and limitations provisions are intertwined, the result would be the same even if the 1967 amendments were

---

6. The State points out that this Court "recently acknowledged that the Legislature 'intended that there be no statute of limitations in respect to penitentiary misdemeanors," quoting *In re Anthony R.*, 362 Md. 51, 76, 763 A.2d 136, 150 (2000). That statement in *Anthony R.* referred to the legislative intent following the 1991 amendment; it does not purport to, and does not, suggest the legislative intent "pre" that amendment. Indeed, the Court in *Anthony R.* demonstrated that the Legislature merely followed the Court's suggestion as to how to achieve a no limitations status after our decision (362 Md. at 75, 763 A.2d at 149–50):

> "Earlier in our discussion in *Massey*, 320 Md. at 620, 579 A.2d at 272, we stated, concerning the provision then in section 5–106(a) excepting penitentiary misdemeanors from the one-year limitation provision, that
> 'If the Legislature today were to provide that, notwithstanding Art. 27, § 690, a particular offense should be punished by confinement in the penitentiary, the exception in section 5–106(a) would be fully operative with regard to that offense.'
> "Apparently, the Legislature did just what we discussed, even using our language, by enacting Chapter 371 of the Laws of Maryland of 1991 (House Bill 396). Its title clause provided:
> 'FOR the purpose of . . . establishing that notwithstanding Article 27, § 690(e) of the Code or the decision of the Court in *Massey v. State*, 320 Md. 605, 579 A.2d 265 (1990), if a statute provides that a misdemeanor is punishable by imprisonment in the penitentiary, the State may institute a prosecution for the offense at any time; . . . and generally relating to penitentiary misdemeanors."

prospective only. After June 1, 1967, in any case, the sentencing authority of trial judges with respect to the length and place of confinement to the penitentiary did not any longer exist.

## B.

We turn now to whether the 1991 amendment of the statute of limitations applies to this case. That question implicates the issue of whether the statute effecting the amendment was intended to be applied retrospectively or prospectively.

*Blocher v. Harlow*, 268 Md. 571, 303 A.2d 395 (1973), is instructive on the issue. There, this Court was faced with whether the statute of limitations had run when, for the first time, more than three years after an accident and more than 33 months after appointment as administrator, the administrator of an estate was named a party defendant. The dispute involved the 1957 version of Maryland Code, Art. 93, § 112, which provided that any "action for injuries to the person to be maintainable against an executor or administrator must be commenced within six calendar months after the date of the qualification of the executor or administrator of the testator or intestate," *id.* at 575, 303 A.2d at 397, and its 1966 amendment which permitted such an action "against the estate of a testator or intestate [to] be instituted after the expiration of six months but within the statute of limitation...."[7] The Court noted, 268 Md. at 579, 303 A.2d at 399, that "if the pre 1966 section applied the action had to be filed by June 10, 1966, while if the 1966 amendment, effective June 1, 1966, applied, the declaration filed September 28, 1966, was timely."

Quoting *Janda v. General Motors*, 237 Md. 161, 168, 205 A.2d 228, 232 (1964), the *Blocher* Court stated that "various rules have been formulated by the courts to aid in

---

7. The applicable statute of limitation was then found in Md.Code (1957), Art. 57 § 1, which required actions for personal injuries to "be commenced, sued or issued within three years from the time the cause of action accrued...."

determining whether a statute is to be applied retrospectively or prospectively." 268 Md. at 579, 303 A.2d at 399. In *Janda*, 237 Md. at 168–69, 205 A.2d at 232 the Court observed:

> "(1) 'Ordinarily a change affecting procedure only, and not substantive rights, made by statute (and an amendment of the Maryland Rules has essentially the same effect) applies to all actions [and matters] whether accrued, pending or future, unless a contrary intention is expressed.' *Richardson v. Richardson*, 217 Md. 316, 320, 142 A.2d 550 and cases cited. (2) Ordinarily a statute affecting matters or rights of substance will not be given a retrospective operation as to transactions, matters and events not in litigation at the time the statute takes effect:
>
>> ' * * * unless its words are so clear, strong and imperative in their retrospective expression that no other meaning can be attached to them, or unless the manifest intention of the Legislature could not otherwise be gratified. * * * (citing cases). An amendatory Act takes effect, like any other legislative enactment, only from the time of its passage, and has no application to prior transactions, unless an intent to the contrary is expressed in the Act or clearly implied from its provisions.' *Tax Comm. v. Power Company*, 182 Md. 111, 117[, 32 A.2d 382, 384 (1943)]."

The Court held that the 1966 amendment to § 112 was not applicable where an "[e]xamination of Chapter 642 of the Acts of 1966 by which this amendment to § 112 was effected shows nothing in the act itself to indicate an intent that it be applied retrospectively...." 268 Md. at 581, 303 A.2d at 400.[8] Thus,

---

8. The Court, 268 Md. at 584–85, 303 A.2d at 401–02, expressly held:
" 'One of the cardinal rules of statutory construction is that wherever possible an interpretation should be given to statutory language which will not lead to absurd consequences.' To hold that the claim accrues on the date of accident for the purpose of the three year statute of limitations embodied in § 112 and to hold that it accrues on the date of the appointment of the administrator for the purpose of determining whether the amended § 112 applies to this incident appears to us to be barred by this rule. We see yet another anoma-

*Blocher* teaches that unless the words of a statute are so clear, strong and imperative in expressing a retrospective effect, the statute is prospective.

To the same effect, albeit interpreting a rule, is *Rawlings v. Rawlings*, 362 Md. 535, 766 A.2d 98 (2001). In that case, we considered whether Maryland Rule 15–207(e) applied retrospectively or prospectively.[9] There, the Circuit Court, on

---

lous result that might stem from a determination that the date of grant of letters of administration is the significant date in determining the applicability of the amended statute. If in this instance the driver of the King vehicle had also been killed in the accident and letters of administration had been granted on her estate prior to June 1, 1966, then under such an interpretation we would have a result where with both drivers killed at the same time in the same accident the plaintiffs would be required to sue one within the six month provision of § 112 as it existed prior to June 1, 1966, but permitted to sue within the three year statute of limitations provision placed in § 112 by the 1966 amendment as to the other driver, letters having been granted subsequent to June 1, 1966."

9. Maryland Rule 15–207(e), effective January 1, 1997, provides:
"(e) Constructive civil contempt—Support enforcement action.
"(1) Applicability. This section applies to proceedings for constructive civil contempt based on an alleged failure to pay spousal or child support, including an award of emergency family maintenance under Code, Family Law Article, Title 4, Subtitle 5.
"(2) Petitioner's burden of proof. Subject to subsection (3) of this section, the court may make a finding of contempt if the petitioner proves by clear and convincing evidence that the alleged contemnor has not paid the amount owed, accounting from the effective date of the support order through the date of the contempt hearing.
"(3) When a finding of contempt may not be made. The court may not make finding of contempt if the alleged contemnor proves by a preponderance of the evidence that (A) rom the date of the support order through the date of the contempt hearing the alleged contemnor (i) never had the ability to pay more than the amount actually paid and (ii) made reasonable efforts to become or remain employed or otherwise lawfully obtain the funds necessary to make payment, or (B) enforcement by contempt is barred by limitations as to each unpaid spousal or child support payment for which the alleged contemnor does not make the proof set forth in subsection (3)(A) of this section.
"(4) Order. Upon a finding of constructive civil contempt for failure to pay spousal or child support, the court shall issue a written order that specifies (A) the amount of the arrearage for which enforcement by contempt is not barred limitations, (B) any sanction imposed for the contempt, and (C) how the contempt may be purged. If the

March 19, 1999, found Mr. Rawlings in contempt for failure to pay child support, pursuant to the terms of a Pendente Lite Order. Mr. Rawlings argued that, "because 'some of his child support payments were due prior to January 1, 1997,' application of Rule 15–207(e) to the evidence adduced at the 19 March 1999 contempt hearing regarding his total unpaid child support, most of which accrued after 1 January 1997, constituted an impermissible retrospective application of the Rule."

■ This Court noted:

"To ascertain the permissible retrospective or prospective sweep of Rule 15–207(e), it is necessary to examine and 'effectuate the legislative intention.' Generally, 'retrospective operation is not favored by the courts . . . and a law will not be construed as retroactive unless the act clearly, by express language or necessary implication, indicates that the legislature intended a retroactive application.' Norman J. Singer, 2 *Statutes and Statutory Construction* § 41.04, at 349 (5th ed.1993). We stated in *Mason v. State* [309 Md. 215, 522 A.2d 1344 (1987) ]:

"Several well settled rules of statutory interpretation are applicable in seeking to ascertain the actual intention of the legislature. These are: (1) A statute is presumed to operate prospectively from its effective date, absent clear language to the contrary, or unless the manifest intention of the Legislature indicates otherwise; (2) Despite the presumption of prospectivity, a statute effecting a change in procedure only, and not in substantive rights, ordinarily applies to all actions whether *accrued, pending or future,* unless a contrary intention is expressed; and (3) A statute affecting or impairing substantive rights will not operate retrospectively as to transactions, matters, and

---

contemnor does not have the present ability to purge the contempt, the order may include directions that the contemnor make specified payments on the arrearage at future times and perform specified acts to enable the contemnor to comply with the direction to make payments."

events not in litigation at the time the statute takes effect unless its language clearly so indicates.

*Mason,* 309 Md. at 219–20, 522 A.2d at 1346."

*Rawlings,* 362 Md. at 554–55, 766 A.2d at 109 (string citation and footnotes omitted). We concluded that the Rule only affected procedure, and not substantive rights; it was remedial in nature and, therefore, operated retrospectively.[10] *Id.* at 559, 766 A.2d at 111.

*State v. Humphrey,* 139 Wash.2d 53, 983 P.2d 1118 (1999) is an example of the application of a non-remedial statute. In that case, the Supreme Court of Washington addressed the correct application of an amendment to a statute which raised the amount of a victim penalty assessment from $100 to $500. The defendant had committed his offense prior to the effective date of the amendment, but upon his conviction after the effective date, he was assessed the $500 penalty, rather than the $100 penalty that was in effect when he was charged. *Id.* at 55, 983 P.2d at 1119. Telling in the court's analysis was the fact that the size of the increase in the victim penalty assessment indicated that the amendment was not remedial:

"[I]n deciding whether the increase is remedial or substantive, we look to the effect, not the form of the law. We find that the increase in the amount of the assessment from $100 to $500 is more in the nature of a new liability than a remedial increase in an already existing obligation.... Because the ... amendment ... appears to create a new liability, we find it is not remedial...."

*Id.* at 63, 983 P.2d at 1123.

Equally important, the court also noted that "[a]s a general rule, courts presume that statutes operate prospectively unless contrary legislative intent is express or implied. An amendment is like any other statute and applies prospectively only." *Id.* at 60, 983 P.2d at 1121–22. Noting that the

---

**10.** We said in *Rawlings,* 362 Md. 535, 557, 766 A.2d 98, 110 (2001), "[t]he definition of a remedial statute has ... been stated as a statute that relates to practice, procedure, or remedies and does not affect substantive or vested rights."

language of the amendment did not indicate whether it was to be applied to offenses committed before its enactment and prospective application of criminal statutes meant application to offenses committed on, or after, the effective date of the statute, the court declined to construe the amendment as applying retrospectively.

The 1991 amendment in the case *sub judice* is akin to a non-remedial statute. The increase in the statute of limitations period from one year to infinity, operated "more in the nature of a new liability than a remedial increase in an already existing [punishment]." *Humphrey*, at 63, 983 P.2d at 1123.

Other courts have reached similar conclusions regarding the general rule of prospectivity. *Oxford Tire Supply, Inc. v. Commissioner of Revenue Services*, 253 Conn. 683, 691–92, 755 A.2d 850, 855 (2000) ("Whether to apply [statute] retroactively or prospectively depends upon the intent of the legislature in enacting the statute.... [S]tatutes affecting substantive rights shall apply prospectively only.... This presumption in favor of prospective applicability, however, may be rebutted when the legislature clearly and unequivocally expresses its intent that the legislation shall apply retrospectively.... We generally look to the statutory language and the pertinent legislative history to ascertain whether the legislature intended that the amendment be given retrospective effect"); *Kentucky Insurance Guaranty Association v. Jeffers*, 13 S.W.3d 606, 611 (Ky.2000) ("laws should not be applied retroactively, [and this applies] to laws of substance only, and not those dealing strictly with the extent of remedy"); *Bates v. State*, 750 So.2d 6, 10 (Fla.1999) ("In Florida, without clear legislative intent to the contrary, a law is presumed to apply prospectively. Retroactive application of the law is generally disfavored ... and any basis for retroactive application must be unequivocal and leave no doubt as to the legislative intent."); *Board of Trustees of the Municipal Fire & Police Retirement Systems of Iowa v. City of West Des Moines*, 587 N.W.2d 227, 230 (Iowa 1998) ("Generally, a newly enacted statute is applied prospectively. While this rule is nearly always followed when the legislation relates to

substantive rights, we recognize a statute or amendment may be applied retrospectively when it relates solely to a remedy or procedure."); *Western Security Bank v. Superior Court of Los Angeles,* 15 Cal.4th 232, 62 Cal.Rptr.2d 243, 933 P.2d 507, 513 (1997) ("A basic canon of statutory interpretation is that statutes do not operate retrospectively unless the Legislature plainly intended them to do so.... Of course, when the Legislature clearly intends a statute to operate retrospectively, we are obliged to carry out that intent unless due process considerations prevent us.").

The Legislature enumerated the purpose of Chapter 371:

"FOR THE PURPOSE of setting forth, without amendment, the provisions of the Annotated Code of Maryland establishing certain criminal offenses as misdemeanors punishable by imprisonment in the penitentiary; establishing that notwithstanding Article 27, § 690(e) of the Code or the decision of the Court in *Massey v. State,* 320 Md. 605, 579 A.2d 265 (1990), if a statute provides that a misdemeanor is punishable by imprisonment in the penitentiary, the State may institute a prosecution for the offense at any time; ... and generally relating to penitentiary misdemeanors."

Interestingly, stricken from the Chapter was language that would have purported to "confirm[], and clarify[] that these offenses are not subject to a statute of limitations, notwithstanding" *Massey.* Section 4 of the Chapter provides: "And be it further enacted that this Act shall take effect July 1, 1991."

There is no indication, not to mention a clear one, to apply this amendment retrospectively.[11] By its very terms, it ap-

---

11. The State cites *People v. Frazer,* 21 Cal.4th 737, 88 Cal.Rptr.2d 312, 982 P.2d 180 (1999), *cert. denied,* 529 U.S. 1108, 120 S.Ct. 1960, 146 L.Ed.2d 792 (2000) for the proposition that "changing a statute of limitation does not violate the [ex poste facto] Clause, particularly where, as here, there was no change in 1991 from the limitations rule in effect in 1958 to 1960." That case is inapposite. There, unlike in this case, there was clear evidence that the Legislature intended the new, extended statute of limitations to apply retrospectively. The Court pointed out that the amended limitations period "applies to a cause of

plies prospectively and, therefore, only to the unnatural and perverted sex practices law as amended in 1991, and not to that in force in 1958–60 or as amended in 1967.

JUDGMENT AFFIRMED, WITH COSTS.

---

action arising before, on, or after January 1, 1994, the effective date of this subdivision" and that "[t]he 1996 amendment also made explicit the Legislature's intent to "revive any cause of action barred by Section 800 or 801." 88 Cal.Rptr.2d 312, 982 P.2d at 186.

Moreover, *Frazer* is no longer good law. *Stogner v. California,* —— U.S. ——, 123 S.Ct. 2446, 156 L.Ed.2d 544 (2003). In that case, referring to the statute at issue in *Frazer,* the Supreme Court opined:
"The Constitution's two *Ex Post Facto* Clauses prohibit the. Federal Government and the States from enacting laws with certain retroactive effects. See Art. I, § 9, cl. 3 (Federal Government); Art. I, § 10, cl. 1 (States). The law at issue here created a new criminal limitations period that extends the time in which prosecution is allowed. It authorized criminal prosecutions that the passage of time had previously barred. Moreover, it was enacted after prior limitations periods for Stogner's alleged offenses had expired. Do these features of the law, taken together, produce the kind of retroactivity that the Constitution forbids? We conclude that they do."
*Id.* at ——, 123 S.Ct. at 2449, 156 L.Ed.2d at ——.